## HUTTER v. BROOME.

(Circuit Court, D. New Jersey. March 4, 1902.)

**1. PATENTS—INFRINGEMENT—BOTTLE STOPPERS.**
  The Hutter patent, No. 491,113, for a bottle stopper, construed, and *held* not anticipated, and to disclose patentable invention. Also *held* infringed.

**2. SAME—DESIGNS.**
  In considering the question of infringement of a design patent, the article of the patent and that alleged to infringe must be viewed as wholes, and infringement may be found if they are so similar that one would readily be mistaken for the other by an ordinarily intelligent observer, notwithstanding real, but minute, differences which may be discovered by expert examiners.

**3. SAME—DESIGN FOR BOTTLE STOPPER.**
  The Hutter design patent, No. 25,435, for a design for a bottle stopper *held* valid and infringed.

In Equity. Suit for the conjoint infringement of letters patent No. 491,113 for a bottle stopper, issued to Karl Hutter February 7, 1893, and design patent No. 25,435 for a design for a bottle stopper issued to the same patentee April 28, 1896. On final hearing.

Arthur v. Briesen and Hans v. Briesen, for complainant.
George H. Fletcher, for defendant.

GRAY, Circuit Judge. This is a suit in the usual form for an injunction and accounting, brought by Karl Hutter against Lewis H. Broome, doing business under the name and style of the Victor Bottle Stopper Company, for the conjoint infringement of letters patent No. 491,113, of February 7, 1893, and of design patent No. 25,435, of April 28, 1896. Both of these patents relate to bottle stoppers, and both were issued to Karl Hutter, the complainant. The defenses are a denial of infringement, an alleged want of novelty or invention, and of consequent patentability in the mechanical patent, and of want of similarity between the design described in the design patent and that of defendant's structure.

The object of the invention, as stated in the specifications of the letters patent No. 491,113, is as follows:

"The chief object of the invention is to provide a bottle stopper with a plug so constructed that the bent ends of the bail can be passed through it, and also to provide such a plug with means for hermetically sealing the bottle. The invention consists more especially in providing the tapering plug with a substantially triangular or heart-shaped slot, through which the inwardly bent ends of the bail wire can be inserted."

The claim of the patent is single, and is as follows:

"What I claim as my invention is the combination of the bottle stopper plug, e, having substantially heart-shaped slot, i, the apex of said slot being lowermost and centered in said plug, e, with the bail wire, d, having bent ends, d², and means substantially as described for connecting said bail wire to the bottle, the slot, i, being wider than the bend, d², of the bail wire is long, as and for the purposes described."

The state of the art at the time of the issue of this patent is sufficiently shown by the references made by the patent office in denying the first application by the patentee. The references are to White-

man, No. 284,523, September 4, 1883, and an English patent to Michel, No. 1,601 of 1878, for stopper fasteners and swing stoppers and yoke. In the patent in suit the bail wire, the eccentric lever, and the general mechanism for producing and maintaining pressure upon the stopper, together with the rubber band interposed between the shoulder of the stopper and the top of the mouth of the bottle, elements of the combination, are old; but the heart-shaped slot or hole in the top of the stopper, with the apex of the heart pointing downwards, and the top thereof wide enough to allow the bent end of the bails to readily pass through, are claimed to be new, and, in combination with the other elements described, to produce a new and patentable result. We have examined the other patents referred to by defendant as anticipations, but do not find that, in the restricted form in which the patent was finally granted by the commissioner, they can be relied upon as such. Prior to the patent in suit, bail wires have been passed over the top of flat metal stoppers, as in the Whiteman patent and the Quillfeldt reissue patent. They were unsatisfactory, the metal corroding and disintegrating the rubber, and in other respects they were insufficient for the purpose of a secure and durable stopper. There had also been other devices for porcelain stoppers or glass stoppers with slots through the top of the stoppers, sufficient to hold the wire, but not to allow the bent end to pass through. One patented device allowed the bent end to pass through a horizontal slot, and then down another vertical slot, at right angles to it. The thing desired in the art seems to have been what has now been produced under the patent in suit; that is, a stopper of porcelain, or other like material, with a sufficiently large but shapely head, containing an aperture large enough to allow the passing through readily of the bent end of the bail piece, in combination with mechanism for producing and maintaining pressure, and, with the adjustable rubber bands, to render air-tight the contact between the top of the mouth of the bottle and the stopper. The peculiar device of the patent in suit is not only for an opening or slot in the head of the stopper large enough to admit readily the bent end of the bail piece, but also that it should be triangular, or heart-shaped, with the apex pointing downwards towards the mouth of the bottle, so that the bail piece readily and necessarily centers itself through the stopper, thus insuring equally applied pressure to the stopper when the lever is thrown down. It is the enlarged aperture and this peculiar shape together, both claimed in the patent in suit, which give the device its peculiar value and advantage over anything theretofore existing in the art. Incidental advantages claimed by the patentee, though not specified in the claim, are ease of cleaning and keeping clean the stopper and aperture, and increased facility of adjustment, when the stopper is hanging loose on the bail piece, for the purpose of entering it into the mouth of the bottle. The great advantage, however, of the device of the patent in suit is that, besides furnishing an easily adjustable stopper, the capacity of the aperture to receive the bent end of the bail piece preserves the bail mechanism for use again should the stopper be broken. That these results should have been accomplished by so simple a change in the prior

art, suggests, it must be admitted, a possible want of invention. As said by the commissioner of patents, in rejecting the first application, the mere enlargement of the aperture in the top of the stopper did not involve invention. It was merely a matter of degree, more or less, that would have suggested itself to ordinary mechanical skill. The claim, however, as finally granted, is not for the mere enlargement of the hole, through which the bail piece passed, but for an enlarged aperture of triangular or heart-shaped character. The advantages of this device, as appears from the testimony, are that it will permit the removal of an old or broken plug from the bail wire, and the substitution of a new plug; that the bail wire will automatically center itself in the plug, and apply its pressure at the proper place, when the lever is turned down, with the other incidental advantages spoken of above.

It is easy to belittle the invention involved in a simple device, such as this, but the fact that it had not occurred to any one before to make such a combination for the attainment of so many useful results appeals strongly in favor of the conclusion that there is here a true invention. The presumption, too, in favor of the action of the patent office in issuing the letters after protracted consideration, is, as always, an important factor in determining the presence of invention in a given patented device. The testimony in this case does not, in my opinion, overcome this presumption, and the patent, therefore, must be pronounced valid.

No serious contention is made by the defendant as to the validity of the design patent No. 25,435, of April 28, 1896. Infringement, however, is denied, on the ground of certain differences discovered between the form of complainant's and defendant's stoppers. The existence of such differences depends principally upon the testimony of defendant's experts. By that testimony it is also pointed out that the button at the bottom of the stopper actually made by complainant differs from the drawing in his design patent, in that the former extends to the outer limit of the bead, D, while the latter is slightly offset from the edges of said bead. A careful inspection, however, of the design patent and of the exhibits of the defendant's stopper convinces me that these differences, whether between the drawing of the design in the patent and complainant's actual structure or between either of these and defendant's structure, are too minute and unimportant to overcome the charge of infringement. The design of the patent and the alleged imitation must be viewed as wholes, and judged by the impression made upon the eye of an intelligent observer not unaccustomed to observe the same. If to such an eye—for instance, that of a dealer in the articles in question, or one interested commercially in their use—the appearance of the two articles is so similar as that one could readily be mistaken for the other, ground for alleging infringement may be said to exist. And this is so notwithstanding that real, but minute, differences of outline, not affecting the general contour and form as apparent to the ordinary observer, may have been discovered by expert examiners. The testimony of several witnesses, accustomed to handle such goods, establishes such substantial similarity between the design of

complainant's stopper, as protected by his patent, and that of defendant's stopper, as to justify and support the charge of infringement.

The two inventions which are the subject-matter severally of the patents in suit being, in my opinion, capable of conjoint use in one and the same bottle stopper, and it appearing from the testimony that the defendant actually conjointly was using the said two inventions in single bottle stoppers made, used, and sold by him, let a decree be drawn in conformity with this opinion and the prayer of the said bill.