## TRICO PRODUCTS CORPORATION v. ACE PRODUCTS CORPORATION et al.

District Court, D. Connecticut. January 15, 1929.

No. 1950.

Bristol & White and Edmond M. Bartholow, all of New Haven, Conn., and Barton A. Bean, Jr., and Harrison M. Brooks, both of Buffalo, N. Y., for plaintiff.

Arthur Klein, of New Haven, Conn., for defendants.

BURROWS, District Judge. This suit is brought in equity for an injunction and for profits and damages on account of the alleged infringement by the defendants of patent No. 1,659,496, issued to Trico Products Corporation, the plaintiff herein, as assignee of John R. Oishei and Henry Hueber, for windshield wiper dated February 14, 1928, on an application filed March 29, 1927. The action is also brought for unfair competition, the bill of complaint alleging that the defendants unfairly sold windshield wipers made in imitation of wipers manufactured by the plaintiff, and that defendants unfairly imitated the packages and containers in which plaintiff sold its wipers.

The suit is brought against the Ace Products Corporation and against George M. La Vietes and Miriam F. La Vietes. The bill of complaint alleges, and defendants' answer admits, that George M. La Vietes is the president, and Miriam La Vietes is the secretary and treasurer, of the Ace Products Corporation. The only facts admitted or proved associating the individual defendants with the acts complained of are the official positions which these individuals hold in the company, and that George M. La Vietes is in sole control of the Ace Products Corporation. There is no evidence presented tending to show that the Ace Products Company is insolvent or that either or both of the individual defendants, George M. La Vietes and Miriam F. La Vietes, acted beyond the scope of their offices, or that they personally participated in the manufacture or sale of the alleged infringing articles other than as officers, or that they used the defendant company as a cloak to avoid personal liability. Under this state of facts, it should be found that the individual defendants are not liable for the alleged infringing acts, and the bill as to them should be dismissed. Dangler et al. v. Imperial Machine Co. et al. (C. C. A.) 11 F.(2d) 945; Tinsel Corporation of America v. B. Haupt & Co., Inc., et al. (D. C.) 25 F.(2d) 318.

Before taking up the question of infringement of the patent, the matter of unfair competition may be disposed of.

First, as to the alleged unfair competition on account of the alleged sale of windshield wipers made in imitation of the plaintiff's windshield wipers, irrespective of the packages or containers for the same. The law is fairly well settled that, before a case of unfair competition is made out, it must be proved that, before the defendant entered the field, the appearance of the article has become associated in the public mind with the first comer as manufacturer or source, and that the defendant has done more than merely copy the functional features of the article. There is no evidence presented that the appearance of plaintiff's goods had, in fact, come to mean that some particular person makes them—and the public cares who does make them—or that the plaintiff's windshield wipers have a distinctive appearance or any nonfunctional features. The mere fact that there is similarity between the defendant's windshield wiper and the plaintiff's windshield wiper without nonfunctional features is not sufficient to sustain a charge of unfair competition. It should be held, as to this phase of the matter, that a charge of unfair competition has not been made out. Crescent Tool Co. v. Kilborn & Bishop Co. (C. C. A.) 247 F. 299; Hudson Motor Specialties Co. et al. v. Apco Manufacturing Co. (D. C.) 288 F. 871; Rathbone, Sard & Co. v. Champion Steel Range Co. (C. C. A.) 189 F. 26, 37 L. R. A. (N. S.) 258.

Second, as to the charge that defendants had been guilty of unfair competition because they advertised, manufactured, and sold windshield wipers in packages or containers similar to those used by plaintiff. It appears that the defendants did package their windshield wipers in containers which were very similar to, and easily confusable with, the containers employed by plaintiff. The fact that those containers were similar to plaintiff's is not seriously denied by defendants. There is evidence that attorneys to whom defendants submitted the matter advised they were so similar as to constitute unfair competition. After such advice, defendants allege that they ceased selling their windshield wipers in such packages or containers as are put in evidence as Plaintiff's Exhibit 2. An examination of defendants' wrapper, Plaintiff's Exhibit 2, and plaintiff's wrapper, Plaintiff's Exhibit 4, can lead to only one conclusion, namely, that the defendant corporation willfully and deliberately attempted to pirate plaintiff's trade. Defendants also circularized to the trade an advertising card, Plaintiff's Exhibit 3, which contained a picture similar to that imposed upon plaintiff's wrappers. It should be held that the defendant corporation has been guilty of unfair competition in circularizing the cards referred to, and in packaging and selling their

windshield wipers in envelopes similar to those of plaintiff's. While the defendants allege that they have ceased such unfair competing acts, nevertheless an injunction should issue against them.

■ The patent in suit relates to a windshield cleaner which is aptly described by the two claims which read as follows:

"1. A windshield cleaner for mounting on the windshields of motor vehicles, comprising a multi-ply wiper adapted to be mounted on a wiper arm whereby the wiper may flop over about its composite wiping edge at the beginning of each stroke of the arm for dragging behind the arm at an incline to the windshield glass, said multi-ply wiper comprising a holder and a plurality of flexible plies projecting unequal distances from the holder, said plies consisting of a major ply with a rubbing edge in constant engagement with the windshield glass and a minor ply on each side of the major ply having a rubbing edge spaced a shorter distance from the holder than said major ply rubbing edge for alternately contacting with the glass on one stroke in co-action with said major ply rubbing edge and lifting from the glass on the return stroke for reinforcing said constantly engaged major strip during its return wiping stroke, said minor plies acting in alternation with each other.

"2. A wiper for windshield cleaners comprising a holder member adapted to secure a plurality of flexible wiping strips, said holder member having a part for attachment to a movable windshield cleaner arm adapted to be actuated in movements substantially parallel to the windshield glass including co-operating parts on said arm and holder whereby on the movement of the arm in one direction, the holder member is disposed at an inclination to the face of the windshield glass and on the movement of the arm in the opposite direction, the holder member is inclined in the opposite direction to said face of the windshield glass, a plurality of flexible wiping strips in said holder including a major strip having a rubbing edge adapted to contact with the face of the windshield glass in movements of the arm and holder in both directions on the windshield glass, and minor strips on opposite sides of said major strip, the rubbing edges of said minor strips projecting shorter distances than the edge of said major strip from the holder toward the windshield glass whereby the minor strips at one side of the major strip in movement of the holder in one direction on the windshield glass engage the windshield glass in wiping contact at different inclinations to the windshield

glass than said major strip and provide therebetween moisture-receiving channels and in movement of the holder in the opposite direction on the windshield glass close the moisture-receiving channels and reinforce said major strip without substantial contact with said glass, the minor strips on the other side of said major strip performing the wiping function together with said major strip during said last-named movement."

The claims, as I construe them, cover a combination which includes a blade having a plurality of flexible wiper strips arranged as recited so that each will have a wiping action, and means for supporting the blade so that it can change its inclination with respect to the glass upon reversal of direction of movement of the blade.

The defense is invalidity of the claims for want of novelty. A number of earlier patents and a prior use are set up as anticipations. Infringement of the claims is admitted, as is clear from the colloquy appearing on pages 52 to 55 of the record.

The defendant principally relied on the so-called Stromberg prior use as an anticipation of the claims of the patent in suit. The Stromberg structure is early enough to be part of the prior art, as it was earlier than any date alleged or attempted to be proved by the patentees, Oishei and Hueber, as their date of invention. This Stromberg structure consists of a holder having three flexible strips, the inner one of which projects considerably beyond the two side strips or plies. The expert evidence introduced on behalf of the plaintiff and an examination of the actual Stromberg blade shows that the side plies of this blade act merely as reinforcements for the central wiping ply, and do not come into contact, and are not intended to come into contact, with the glass. In the structure disclosed in the patent in suit, the several flexible plies of the wiper are adapted to engage the windshield glass as the wiper is moved back and forth. In the patent in suit, not only the central major ply accomplishes a wiping action, but the side plies serve the same function. This is not true of the Stromberg structure.

Furthermore, in the patent in suit, the wiper is mounted so that it will flop or tilt as it is dragged across the windshield glass so that as the blade is moved in one direction, the wiper is inclined in one direction and the major ply and the two plies to one side thereof will wipe against the glass, and, when the direction of movement of the blade is reversed, the inclination of the blade is reversed, and the major ply and the other two

side plies will effect the wiping operation. There is no evidence that the Stromberg blade, prior to the date of application of the patent in issue, was mounted so as to flop or tilt in a manner similar to the patented structure.

The defendant introduced evidence to the effect that it had been manufacturing a three-ply blade similar to the Stromberg blade. Witnesses for defendant testified that the three-ply blade operated in the same manner as, and is practically as efficient as, the five-ply blade which is alleged to be an infringement. The plaintiff introduced evidence to the effect that the Stromberg blade was not as efficient as the blade of the patent in suit, for the reason that in the Stromberg blade there was but one ply which did the wiping action. It is a significant fact that, while the defendant "gives the tribute of its praise to the prior art, it gives the Grant tire [Trico blade] the tribute of its imitation." Diamond Rubber Co. v. Consolidated Tire Co., 220 U. S. page 441, 31 S. Ct. 450, 55 L. Ed. 527. The very act of the defendant in manufacturing and persisting in manufacturing the five-ply blade, which is alleged to be an infringement, is a tacit admission that that blade has utility over the old Stromberg three-ply blade. I find that this alleged Stromberg prior use is not an anticipation, because the Stromberg blade is different in structure and operation from the structure described in the claims of the patent.

The defendant, in support of its defense of invalidity, has introduced into evidence a number of prior art patents, and of these the one to Tanner, No. 1,534,242, appears to be the most pertinent. This Tanner blade discloses what is termed a "squeegee," which is adapted to be moved across the surface of a window or the like for cleaning the same or removing moisture therefrom. The Tanner squeegee has a blade provided with a holder and a plurality of wiping strips arranged in a manner similar to the arrangement of the wiping strips of the patent in suit. Each of these flexible strips is intended to have a wiping effect. The Tanner structure has a handle to which the blade is rigidly secured. The blade, so far as the disclosure of the Tanner patent goes, is evidently not intended to flop or tilt; that is, to change its angle of inclination with respect to the glass as it is moved thereacross. The question appears to me to come down to this, Is any invention involved, as compared to mere mechanical skill, in taking the Tanner blade and so supporting or mounting it that it can flop or tilt with respect to the glass as it is drawn thereacross? The

patentees were the first to do this. This new combination of elements has resulted in a more effective and useful device. The plaintiff has introduced evidence that the device of the patent in suit operates in a different way from the structure shown in the Tanner patent, owing to the ability of the blade of the patent in suit to flop from one side to another, thereby bringing the several plies into such relation to the glass as to obtain a better wiping action, and, at the same time, to effect the opening and closing of the plies so as to squeeze the water from therebetween.

■ It has been definitely settled, as stated by Justice Day of the Supreme Court, in Expanded Metal Co. v. Bradford, 214 U. S. 366, 29 S. Ct. 652, 53 L. Ed. 1034:

"It is perfectly well settled that a new combination of elements, old in themselves, but which produces a new and useful result, entitles the inventor to the protection of a patent." (Citing Webster Loom Co. v. Higgins, 105 U. S. 580, 26 L. Ed. 1177.)

■ As stated by Judge Thomas of this court, in Line Material Co. v. Brady Electric & Mfg. Co., 299 F. 824:

"With respect to patents which might, by some manipulation or alteration, accomplish a given purpose not unlike the purpose disclosed in the patent in suit, after the obvious simplicity of the patent itself becomes apparent, the law is settled that such device or patent does not constitute anticipation. This rule has been stated by the Supreme Court in Expanded Metal Co. v. Bradford, 214 U. S. 366, at page 381, 29 S. Ct. 652, 655 (53 L. Ed. 1034), by Mr. Justice Day, as follows:

" 'It is often difficult to determine whether a given improvement is a mere mechanical advance, or the result of the exercise of the creative faculty amounting to a meritorious invention. The fact that the invention seems simple after it is made does not determine the question; if this were the rule many of the most beneficial patents would be stricken down. It may be safely said that if those skilled in the mechanical arts are working in a given field and have failed after repeated efforts to discover a certain new and useful improvement, that he who first makes the discovery has done more than make the obvious improvement which would suggest itself to a mechanic skilled in the art, and is entitled to protection as an inventor. There is nothing in the prior art that suggests the combined operation of the Golding patent in suit.' "

In the Barbed Wire Case, 143 U. S. 275, 12 S. Ct. 443, 36 L. Ed. 154, the court said:

"Under such circumstances courts have not been reluctant to sustain a patent to the

man who has taken the final step which has turned a failure into a success. In the law of patents it is the last step that wins. · It may be strange that, considering the important results obtained by Kelly in his patent, it did not occur to him to substitute a coiled wire in place of the diamond shape prong, but evidently it did not; and to the man to whom it did ought not to be denied the quality of inventor. There are many instances in the reported decisions of this court where a monopoly has been sustained in favor of the last of a series of inventors, all of whom were groping to attain a certain result, which only the last one of the number seemed able to grasp. Conspicuous among these is the case of [Webster] Loom Co. v. Higgins, 105 U. S. 580, 591 [26 L. Ed. 1177], where an improvement in looms for weaving pile fabrics, consisting of such a new combination of known devices as to give to a loom the capacity of weaving fifty yards of carpet a day, when before it could only weave forty, was held to be patentable. It was said by the court, in answer to the argument ·that the combination was a mere aggregation of old and well-known devices, that 'this argument would be sound if the combination claimed by Webster was an obvious one for attaining the advantages proposed—one which would occur to any mechanic skilled in the art. But it is plain from the evidence, and from the very fact that it was not sooner adopted and used, that it did not, for years, occur in this light to even the most skillful persons. It may have been under their very eyes, they may almost be said to have stumbled over it; but they certainly failed to see it, to estimate its value, and to bring it into notice. * * * ' " 

■ Further, with respect to this Tanner patent, it is observed that this patent is set up in the file wrapper of the patent in suit, and the Patent Office allowed the claims over, and with the knowledge of, that Tanner patent.

As·was held in Elkon Works v. Welworth Automotive Corporation (D. C.) 25 F.(2d) 968: That the patent in suit was granted after consideration by the Patent Office of the prior patent picked by defendant's expert as the nearest approach to the invention of plaintiff's patent strengthens the presumption of validity of the patent in suit.

Judge Thomas, of this court, in Salt's Textile Manufacturing Co. v. Tingue Manufacturing Co., 227 F. 115, held:

"It is sufficient to say of the prior published art that the additional British patents and the Posselt publication do not disclose any art substantially different from that under consideration by the Patent Office when the patent was granted. The Patent Office ruled that these patents did not disclose equivalents of the Steiner patent. The defendant has introduced no expert testimony explaining these patents and publications, and the court is left to the presumption that the patent itself possesses such an amount of change from the prior art as to entitle it to the presumption which attaches to a patent" —citing Coffin v. Ogden, 18 Wall. 120, 124 (21 L. Ed. 821); Cantrell v. Wallick, 117 U. S. 689, 695, 6 S. Ct. 970 (29 L. Ed. 1017); Hutter v. Broome (C. C.) 114 F. 655, 657.

The remaining prior art patents set up in the answer may be dismissed with the statement that they are either not as pertinent as the Tanner patent above referred to or do not add anything thereover. None of these other patents show a wiper blade mounted for flopping movement, the blades having a multiple of flexible wipers arranged to engage the glass, and of successively decreasing size away from the major wiping strip.

■ Another point in favor of the validity of the claims of the patent in suit is the commercial success with which this patented device met on the market. The evidence discloses, and no attempt is made to deny it by defendant, that from May, 1927 (the date on which plaintiff started to sell the patented windshield wiper), to December, 1927, plaintiff sold 1,733,770 blades constructed in accordance with the patent, and during the first five months of 1928 it sold 1,888,800 such wipers. While evidence of the commercial value of the patented structure cannot be used to save a claim which is obviously invalid, in cases where the validity of the claims is in doubt, such commercial success is very persuasive evidence that invention has been involved. Also the fact that the defendant so quickly copied the patented structure after it was put on the market by plaintiff is indicative of the utility of the structure and the validity of the claims.

Chief Justice Taft held in Temco Electric Motor Co. v. Apco Manufacturing Co., 275 U. S. 319, 48 S. Ct. 170, 72 L. Ed. 298:

"There was litigation over it, especially in the districts of the Sixth Circuit, where the validity of the patent was generally sustained, the first case having been heard by a former justice of this court while a District Judge of the Northern District of Ohio. His opinion is recorded in the record. The case involved not only the validity of the patent, which after some hesitation he sustained because of its general adoption and success, but also presented a question whether the defendants in that case, the K-W Ignition Compa-

ny, were not so bound by contract with the patentees as to estop them from defending against the patent. * * *

"The District Judge in Ohio in the K-W Ignition Case was affected in his decision, that the Thompson patent involved invention, by the way in which the public eagerly took it and its marked success, and so, indeed, was the Circuit Court of Appeals of the Sixth Circuit. So are we."

In the case of Minerals Separation, Limited, et al. v. Hyde, 242 U. S. 261, at page 270, 37 S. Ct. 82, 86 (61 L. Ed. 286) the court said:

"The record shows not only that the process in suit was promptly considered by the patentees as an original and important discovery, but that it was immediately generally accepted as so great an advance over any process known before that, without puffing or other business exploitation, it promptly came into extensive use for the concentration of ores in most, if not all, of the principal mining countries of the world, notably in the United States, Australia, Sweden, Chile and Cuba, and that, because of its economy and simplicity, it has largely replaced all earlier processes. This, of itself, is persuasive evidence of that invention which it is the purpose of the patent laws to reward and protect"—citing Diamond Rubber Co. v. Consolidated Tire Co., 220 U. S. 428, 31 S. Ct. 444, 55 L. Ed. 527; Carnegie Steel Co. v. Cambria Iron Co., 185 U. S. 403, 429, 430, 22 S. Ct. 698 (46 L. Ed. 968); The Barbed Wire Patent, 143 U. S. 275, 12 S. Ct. 443, 36 L. Ed. 154; Smith v. Goodyear Dental Vulcanite Co., 93 U. S. 486, 23 L. Ed. 952.

On the record presented, in view of the presumption of validity which attaches to the grant of a patent, the proven success of the patented device, and the fact that no one of the prior patents or the alleged prior use discloses the combination recited in the claims, I am constrained to hold that the claims are valid and infringed. The bill of complaint as against the individual defendants, George M. La Vietes and Miriam F. La Vietes, is dismissed. The bill of complaint, in so far as it charges unfair competition by the defendant company on account of the manufacture of windshield wipers per se (irrespective of the containers or wrappers), is dismissed. Let a decree be entered holding that the defendant company has been guilty of unfair competition in the packaging and advertising of their windshield wipers, and that plaintiff's patent, No. 1,659,496, is valid and infringed. Let an injunction issue against further unfair competition by the de-

fendant and against infringement of said patent, together with a reference to a master for an accounting on said unfair competition and patent, together with costs. So ordered.