## TRICO PRODUCTS CO. v. APCO–MOSS-BERG CORPORATION.

District Court, D. Massachusetts. September 12, 1929.

No. 2993.

Barton A. Bean, Jr., and Harrison M. Brooks, both of Buffalo, N. Y., for plaintiff.

James R. Hodder, of Boston, Mass., for defendant.

MORTON, District Judge. At the conclusion of the arguments I gave an oral decision on certain points, substantially as follows:

"The bill charges both infringement and unfair competition. As to the latter it was not referred to in argument, and I infer is in effect abandoned. It was clearly untenable. There is no evidence that the defendant's packages imitated those of the plaintiff. The mere fact that the defendant's wipers look like those of the plaintiff is not sufficient to establish unfair competition, unless, as Judge Burrows pointed out, in a suit by this plaintiff in the Connecticut district, the appearance of the plaintiff's article has in the trade become associated with the plaintiff's name. Trico Corporation v. Ace Corporation (D. C.) 30 F.(2d) 688. Nothing of that sort appears in this case.

"Coming to the question of invention: The first thing to look at is the state of the art when the patent was applied for. At that time automatic—by which I mean power-driven—windshield wipers were a well-known device. Many patents covering different phases of them had been granted. The underlying principle of all of them was the same, viz. a straight flexible edge, generally of rubber, moving across the glass. The wiper blades had been made in single-ply, two-ply, and three-ply. They had been so held on the arm as to change their angle to the glass as they were moved back and forth across it—what has been termed "flopping" in this case. The Folberth patent shows and describes this action very clearly, and also that to Heineman, applied for as early as 1910. Tanner shows a squeegee for cleaning windows, consisting of a central strip and three strips on each side of it, running back in steps; the wiping strips are described as made of pieces of old inner tubes. It is, however, to be assumed that the thickness of the strips used would have relation to the size of the implement. There would be no invention in using thinner strips on small squeegees.

"The plaintiff's device consists of a projecting central strip having on each side two strips, stepped back as in the Tanner patent. The step-back is so regulated that, when the wiper takes its wiping position, the edges of all three strips (or plies) come into contact with the glass. The strips are not fastened together close to the edges, and are, therefore, free to open slightly from each other during the wiping movement. This allows a certain amount of the water on the windshield to be drawn in between them by capillary action. On the return stroke these strips are pressed together and the water is squeezed out, while those on the other side open as the wiper flops over. The plaintiff's wiper, so constructed, achieved a striking and rapid commercial success. The manufacture of them began just about two years ago, and about 7,000,000 have been sold. This corroborates rather strongly the plaintiff's testimony that its wiper is distinctly more efficient than the older forms which preceded it. Another significant fact in the same direction is that the defendant has slavishly copied the plaintiff's device. The evidence leaves no fair doubt, I think, that the plaintiff's device is a distinct step forward in the art to which it belongs.

"The most difficult question is whether it involved any invention over the prior art. The defendant says that the plaintiff's wiper is nothing but the Tanner squeegee, reduced in size all around for application to the work in hand and used in the old flopping holder. This is true, with the important qualification, however, that the Tanner squeegee did not involve the comparatively wide flexible edges which are functional in the plaintiff's device. I do not believe that one can take the Tanner squeegee, apply it to a windshield cleaner, and obtain the same efficiency as that of the plaintiff's wiper, without widening the edges to make them flexible and arranging the step-back so as to accord with

the degree of slant or "flop" at which the wiper works. There is nothing in the prior art which embodies, or even suggests, such modification.

"To summarize on this point: The plaintiff's inventors found in the art multi-ply wipers so arranged as to flop on their forward and back motion; but they found nothing in which the edges of the different plies were so arranged as to brush successively on the glass, nor anything in which advantage was taken of several plies, loose at the wiping edges, to take up water between them. The question of invention is not free from doubt. The change which these patentees have made over the prior art is slight; but it appears to be functional, and to increase the efficiency of the device. These facts, coupled with the marked commercial success in a field in which a good deal of effort and thought have evidently been expended, lead me to resolve the doubt in favor of patentability, reaching on this point the same conclusion as Judge Burrows in the Connecticut case. I am not oblivious of the fact that in the re-issue proceedings under the Tanner patent a somewhat inconsistent view was expressed by the plaintiff; but obviously I am to follow my own conclusions."

On a careful re-examination of the case I see no occasion to modify these views. The question of invention turned on the patentee's device—as described in the patent (page 1, lines 30 to 60 and 94 to 110; page 2, lines 1 to 13); and shown by the exhibit wipers—in comparison with the prior art. The question of infringement, which was reserved for further consideration, depends upon the claims.

Claim 1 is so obscurely drawn that, while Judge Burrows interprets it as a combination claim on the wiper and arm, I incline to interpret it as upon the wiper alone. Either way its language is inapt, and it is loaded up with statements of functional operation. The word *"whereby"* in line 4 evidently means *"in such a manner that."* The words immediately following describe the way in which the wiper when loosely mounted operates. See, also, patent, page 2, lines 116 to 121. No novel mode of mounting the wiper is shown or claimed. The passages describing the operation add nothing. If knowledge of the effect and advantages of loose mounting be assumed as part of the prior art, there would be no invention in applying it to any particular wiper. As has been said, the patent as I view it is upon a new wiper, and in my opinion—although the question is close—it shows invention over the wipers which preceded it. If invention is not shown, and the wiper is unpatentable, it cannot be made so by tying it into an old method of operation, or combining it with a wiper arm. Further, this claim omits any clear statement of the flexibility of the wiping edges, referring to them only as *"a plurality of flexible plies extending unequal distances from the holder."* Page 2, lines 108 to 110. It would be readable on a loosely mounted Tanner squeegee. Courts are not called upon to strain construction in favor of claims of this character. This one seems to me not to be directed to those features of the plaintiff's wiper which were novel, and, if not invalid by reason of its obscurity, to be too broad in view of the prior art. It is in my opinion invalid.

Claim 2 is clearly directed to the wiper of the patent, which it describes substantially as is done in the specification. Patent, page 1, lines 30 to 60. While it includes the operation of the wiper more fully than is desirable in a claim, taken as a whole, this claim seems to me to be a reasonably clear description of the novel features of the plaintiff's invention. In my opinion, it is valid and infringed.

The plaintiff contends that both claims are to be regarded as for combinations, one element of which is the wiper arm, described by Judge Burrows as "means for supporting the blade, so that it can change its inclination with respect to the glass upon reversal of direction of movement of the blade." Trico Corporation v. Ace Corporation (D. C.) 30 F.(2d) 688, 690. In this aspect of the matter, as the defendant never sold anything but the blades themselves, its infringement, if any, would only be contributory. I understand that the holders generally sold were of such character as to allow the blade to "flop." Certainly those on the defendant's card for sale with the single-ply blade are of that character; and it has presented no evidence that it did not expect or understand that its multi-ply blades would be used in loose mountings. This being so, whichever way the patent is construed, the defendant infringes the valid claim—directly, if the patent be viewed as upon the blade alone; contributorily, if the other construction be given it. Heaton Co. v. Eureka Co., 77 F. 288, 35 L. R. A. 728, Rupp & Co. v. Elliott, 131 F. 730.

Decree accordingly.