**STEINER SALES CO. v. DARMAN MFG. CO., Inc., et al.**

District Court, N. D. New York.

April 15, 1940.

Martin & Rendell, of Utica, N.Y. (Harold Olsen, of Chicago, Ill., and Cooper, Kerr & Dunham, by Drury W. Cooper, of New York City, of counsel), for plaintiff.

Thomas L. Wilder, of Utica, N. Y. (Cromwell, Greist & Warden, by F. Allen Minne, of Chicago, Ill., of counsel), for defendant.

COOPER, District Judge.

This is a patent infringement suit in which the plaintiff, the Steiner Sales Company, is a corporation having its principal place of business in Utah and having an office and place of business in Chicago, Ill., and the defendants are the Darman Manufacturing Company, Inc., having its principal place of business at Utica, N.Y., and Joseph Darman of Utica, N.Y., who is the president of the corporate defendant.

The complaint charges the defendant with infringement of four patents relating to continuous towel cabinets.

These patents are:

1,479,864, Martin, January 8, 1924.

Reissue, 17,031, Steiner, July 10, 1928.

1,735,516, Steiner, November 12, 1929.

1,959,938, Tyler, May 22, 1934.

The claims of the Martin patent charged to have been infringed are claims 1 to 14 inclusive and 20.

Claim 13 has been selected by the plaintiff as the typical claim of the Martin patent.

As to the Steiner reissue patent, it is alleged that claims 6 to 10 inclusive have been infringed but claim 10 has been selected as the typical claim.

In the Steiner Patent No. 1,735,516, the claims asserted to have been infringed are claims 3, 4, 5, and 7, of which claim 3 has been selected as the typical claim.

In the case of the Tyler patent the charge of infringement is confined to claims 9 and 10, and claim 10 has been selected for the purpose of proving infringement.

The defense is that all these patents are invalid in view of the prior art and that in any event they have not been infringed.

Defendants also contend with reference to the Steiner reissue patent that the reissue was invalid and without authority of law.

The plaintiff and its predecessors have been in the linen supply business since 1887, a large part of which business consisted of furnishing towels.

The individual defendant Darman has been in the towel supply business beginning in 1926, first as an individual until a short time before March 27, 1936, then as partner with another person, which partnership became the corporate defendant on March 27, 1936.

Ordinary roller towels were first used in public places, but because such towels came to be regarded as a menace to public health, it became necessary to devise a cabinet or other means through which clean toweling could be dispensed, or brought out for use and the soiled toweling taken without any contact with the clean toweling, so as to prevent contamination of the clean toweling, by the soiled toweling, so called.

The so-called continuous towel cabinet accomplished this purpose and came into popular use.

The plaintiff, or its predecessor, began the manufacture of continuous towel cabinets in 1917 or 1918.

During a portion of the time plaintiff used Steiner Patent No. 1,426,121, issued August 15, 1922.

The defendant began the manufacture of a towel cabinet about 1926 on a small scale. The individual defendant Darman also obtained certain patents which are not important here.

Paper toweling came on the market and, since the price was reduced and since no laundering was required, became a serious competitor of the cloth towel whose laundering was expensive.

To compete with paper towels it became necessary to have a device which involved a minimum of expense for laundering towels and to have a mechanism which could not easily be gotten out of order and which could be refilled by persons of ordinary mechanical skill, and more especially which would limit the amount of toweling which a user could obtain for use at one time from the cabinet.

The Martin patent and the Tyler patent involve time control stop mechanisms for continuous towel cabinets, which do limit the amount of toweling which may be withdrawn at one time.

The idea is that a person may withdraw at one time only a predetermined length of toweling, whereupon the feed rolls are locked to prevent further withdrawal of toweling until the time mechanism releases the lock.

It is contended by the plaintiff that the Martin patent is for a new and basic conception by which the towel user locks the mechanism by withdrawing the predetermined length of toweling and means for releasing the lock after the lapse of the predetermined time, and that the Tyler patent is for an improvement on Martin arising from the use of a dash pot as the timing and releasing element together with certain connections to the feed rolls and the lock therefor.

### The Martin Patent.

The typical claim 13 reads as follows: "A towel cabinet comprising a towel supply roll, a measuring roll actuated by the toweling, means for arresting the measuring roll after the withdrawal of a predetermined length of toweling, a timing device, means controlled by the measuring roll for setting said timing device and means actuated by said timing device for releasing said arresting means after the expiration of a predetermined period of time."

The patentee Martin says that the object of his invention is:

"This invention relates to a towel cabinet which is more particularly adapted for use in public wash rooms and the like. One of these objects is to so construct the cabinet that only predetermined lengths of toweling may be drawn therefrom by the user at certain time intervals to avoid waste in the use of the same.

"Other objects of the invention are to provide simple and reliable means for automatically locking the towel feeding mechanism for a fixed period after a given length of toweling has been withdrawn and for automatically releasing said mechanism after the time interval has elapsed to enable another length of toweling to be drawn out for use."

The inventor says his timing device is a suitable clock mechanism or equivalent timing device (Page 2, Line 75).

Martin speaks of two ways of applying a timing mechanism to the towel cabinet. In figures 1 to 9 of the drawings he employs a separate measuring roll (30) to which the stop mechanism is applied. In figures 10 to 11 he applies the stop mechanism and the timing device to one of the feed rolls.

Martin shows and describes a towel cabinet in which a stop mechanism is provided which prevents rotation of the feed roll (prevents further withdrawal of toweling) after a predetermined length of toweling has been withdrawn and in which the stop mechanism is released (and another predetermined length of toweling may be withdrawn) after the lapse of a predetermined time interval.

No prior art and no prior use showing such a conception of a towel cabinet is disclosed in the evidence. A prior art patent relating to another subject is relied upon by defendants and will be referred to later.

The defenses to this patent are these:

1. The patent is inoperative and merely represents a dream.

2. That it is anticipated by the patent to Graser (relating to withdrawal of toilet paper in connection with a bath room seat).

3. That even if valid it is not infringed.

4. The broad claims of the Martin patent, such as claim 2, are broadly anticipated by the prior automatic stop.

Defendants assert that the Martin patent will not work.

Plaintiff's also raise the point that any such charge of inoperativeness of the Martin patent should have been pleaded, that proof may not be offered unless pleaded and that plaintiff was taken by surprise, citing Providence Rubber Company v. Goodyear, 9 Wall. 788, 76 U.S. 788, 793, 19 L.Ed. 566.

It is probably true that no cabinets were made strictly within the Martin patent. On the trial, over the objection of the defendants, plaintiff produced two models (Exhibits I and J) which plaintiff's President Steiner said were reproductions of the Martin patent. Cross-examination of plaintiff's officer and expert, Steiner, disclosed that the models showed some slight variations from the drawings of the patent, but the models did work.

The variations in Model J consist of putting the stop pin 51 on the clock casing instead of on bar. 37.

The patentee states in his specifications that the stop pin may be carried "by supporting bar 37 or other suitable fixed parts." Plaintiff seems to be right in its contention that the mechanic who built the Model J followed the patent and put the stop pin on another suitable fixed part.

The other model, Exhibit I, is like the patent even to the inclusion of the relatively wide supporting bar 37, but with the stop pin put on another suitable part. The Model I was also built by an ordinarily skilled mechanic, under instructions to build models of the device shown in the patent.

The plaintiff contends that the part 37 was shown in the drawings as a thick piece of wood instead of a thin piece of metal as it would preferably be, and that any inconsistency in this respect or otherwise between the parts shown in the figures and the description of the patent as embodied in the models was the fault of the draftsman and not of the device described in the patent.

It is not necessary to pass on the point of failure to set forth the defense of inoperativeness. Defendant's contention that the Martin disclosure is unworkable cannot be sustained under the proof for the models worked and appear to be constructed within the description and range of the patent.

### The Graser Patent as Anticipation of Martin.

The defendants contend that the Graser patent is an anticipation of the Martin patent.

The Graser patent was issued March 31, 1908, and is entitled Toilet Roll Paper Holder.

That it does describe a means or mechanism for discharging a predetermined length of toilet paper cannot be successfully disputed.

But that its mechanism is not wholly beyond the control of the user is equally clear. Under the Graser device as shown by the demonstration of the model produced by plaintiff, the whole roll of toilet paper, not merely a predeterminate length, could be withdrawn by the user at one time. No such thing can be done under the Martin patent.

To the defendant's contention that by increasing the friction between the rolls such unlimited discharge of paper could be prevented, the plaintiff's reply is that, if such friction were imposed or increased, the fragile paper would tear and make the apparatus unworkable and furthermore that Graser never contemplated such mechanism as does Martin, because his description negatives any substantial friction, since Graser says in claims 2, 3 and 4, of his patent that his device has "a pair of feed rollers supported *loosely* in peripheral contact with each other."

Loosely supported rollers can have no friction other than such as comes from the weight of the rollers themselves.

The model of Graser showed its working, which was not like Martin's and though the defendants questioned the model, they did not show departure from the patent nor did they show a model which would work other than as claimed by the plaintiff.

It must be held that Graser did not anticipate Martin.

The defendant's claim that defendant's cabinets do not infringe the Martin patent because defendants lack an element of the Martin claims.

That element is the towel supply roll (53) on which the clean towel is wound. The defendants contend that in its cabinet there is no such roller upon which the clean towel is wound.

The defendants contend that in the defendants' cabinet there is nothing but

toweling and no roll corresponding to roll 53 of Martin.

Defendants also contend that Martin's claim 13 also calls for a measuring roll actuated by the towel. This is apparently, say defendants, roll 75 or the clean towel sandpaper covered driving roll. There are not two rolls for the clean towel in defendants' device.

The plaintiff asserts that in the Martin patent the clean towel has been wound on a stock or other suitable core while in the defendants' device the clean towel is wound upon itself; that there is no difference in structure, mode of operation or result.

In short, plaintiff claims that there is substantial identity of structure, operation and result and that any slight variation is merely the equivalent of the patented construction, citing Sanitary Refrigerator v. Winters, 280 U.S. 30, 41, 50 S.Ct. 9, 12, 74 L.Ed. 147, where the court said:

"There is a substantial identity, constituting infringement, where a device is a copy of the thing described by the patentee, 'either without variation, or with such variations as are consistent with its being in substance the same thing.' Burr v. Duryee, 1 Wall. 531 [571], 573, 17 L.Ed. 650 [658].

"Except where form is of the essence of the invention, it has little weight in the decision of such an issue; and, generally speaking, one device is an infringement of another 'if it performs substantially the same function in substantially the same way to obtain the same result.'"

The plaintiff's contention is upheld.

The defendants also contend that if resort be had to the broader claims of claim 2 of the Martin Patent, apparently to bring in the doctrine of equivalents, claim 2 is squarely anticipated by the prior art automatic time stop as shown in many prior art patents.

Claim 2 reads as follows: 2. In a towel cabinet, a stop device for automatically arresting the toweling after the withdrawal of the predetermined length thereof and means beyond the control of the user for automatically releasing the stop device after the expiration of a certain time interval."

These prior art patents did not provide a "means beyond the control of the user for automatically *releasing* said stop device after the expiration of the certain time interval."

While there was automatic stop, the towel could by manipulation of the user be further withdrawn either by pushing the push button or by releasing the tension on the towel.

The decision is that the defendant infringes Martin.

### The Tyler Patent, No. 1,959,938.

■ This patent was granted May 22, 1934, on application filed July 10, 1926. The claim here, regarded as typical, is claim 10, which reads as follows: "A towel cabinet having therein an element rotatable by pull on the towel web to withdraw the web from the cabinet a dash-pot having a plunger, and means on said element cooperative with the plunger to move the plunger during partial rotation of the element, and then prevent further rotation of the element until the plunger is returned to normal position and means for returning the plunger to normal position."

The Tyler patent discloses time stop mechanism which operates by the employment of a dash pot.

Defendant contends that:

1. The patent is void in view of the prior art particularly Martin and Graser patents.

2. That it lacks invention, being only an aggregation of well known parts working in the accustomed manner.

3. That there is no infringement because defendant's device lacks some of the parts.

It is true that Martin discloses a time stop mechanism and Tyler's improvement is the use of a presumably better time stop mechanism.

The Martin patent was cited by the Examiner in the patent office as anticipation of Tyler but Tyler's claims were considered patentable over Martin. This strengthens the presumption of validity.

■ There was some considerable commercial use of the Tyler improvement in towel cabinets. The fact that the manufacturer became bankrupt does not destroy or wipe out commercial success for bankruptcy may often arise from lack of sufficient capital and other excusable causes.

Graser must be held not to anticipate Tyler for the reasons stated relating to the Graser anticipation of the Martin patent.

Tyler's improvement over Martin seems a meritorious one. Plaintiff has sold large

quantities of towel cabinets having the Tyler time stop mechanism.

Defendants claim that their device is really different but the difference does not take the cause out of the field of equivalents for defendants' contention that their device works substantially different cannot be sustained.

▇ Tyler, like Martin, uses old elements but by their combination gets a new and desirable result not heretofore obtained.

It cannot reasonably be said, then, that the Tyler patent lacks invention within the limited field nor that it is merely an aggregation of old elements accomplishing no new result.

Tyler is valid and infringed.

### Steiner Reissue Patent No. 17,031

▇ This was granted July 10, 1938, on application filed January 30, 1928. The original patent was granted August 17, 1926.

The alleged typical claim 10 reads as follows: "10. A towel cabinet having mechanism therein for keeping separated the front clean portion of a towel web from the rear soiled portion, comprising a support for a towel supply and a soiled towel take up roll, two feed rolls geared together to move in unison, one feed roll approximately on a level with and back of the other in the cabinet, the rear feed roll being in contact with and supporting the take up roll, the front feed roll being in the front portion of the cabinet and in contact with the clean portion of the towel so that the web of toweling may hang down therefrom and the clean portion thereof be removed from the soiled portion of the towel web a maximum distance in said cabinet."

The patentee asserts that his invention brings this result.

He says (Page 1, Lines 94–104): "It will be noted that the feed rolls in the above application are arranged upon substantially the same level, one at the front and the other at the rear of the cabinet and are thus able to bring the towel rolls nearer together to make the cabinet smaller and more compact. This arrangement for feed rolls also provides a wide gap or space between the clean portion of the depending loop of the towel and the soiled portion and this, of course, is always desirable."

In this towel cabinet the roll or clean toweling (6) is located and supported near the bottom of the cabinet. The clean toweling extends diagonally upward and passes over the clean towel feed roll or control roll (11) located and supported near the front of the cabinet. Then the clean toweling moves down to and out of the front part of the bottom of the cabinet in the form of a loop and, after use the soiled towel moves upward at the back of the cabinet, passing over the soiled towel feed roll or control roll 12 and thence on the soiled towel take up roll (7) which rests on control roll 12.

These two controlling rolls (11 and 12) are located or placed on the same horizontal plane and provided with sprockets and chains so that they are driven in unison. The clean towel roll is in the front of the cabinet and the soiled towel roll in the rear. On the trial this patent was nicknamed the horizontal roll patent. Heretofore the rolls were located in a vertical or diagonal plane in the towel cabinet.

The defenses are:

(1) That it was old in the art to arrange drive rolls in a horizontal position and let the toweling hang directly down from them.

(2) That there was no invention in putting the rolls in a horizontal plane because they still perform the same function, and nothing is saved in the size of the cabinet because while the cabinet may be shorter it must be made thicker and wider.

(3) The defendants' device is not like the Steiner reissue patent because the towel does not hang down from a feed roll but passes over a bar and rod and hangs down from this bar or rod as was common in the prior art.

(4) The reissue patent is invalid for the reason that there was no inadvertence, accident or mistake in the original grant and, under the authorities, the commissioner had no power to grant the reissue.

The prior art upon which defendant relies is the Schwimmer patent No. 1,386,389, granted August 2, 1921 and the British patent of Billings, No. 21,190, granted in 1890.

This Schwimmer patent is cited by the examiner in the patent office in the rejection of some claims appearing for the first time in the reissue.

Schwimmer has four feed rolls arranged in substantially the same level and manifestly did not make such a compact arrangement as that shown in the patent now under consideration. Nor does Schwimmer support the soiled towel take up roll upon

the soiled towel control roll as specified in the Steiner re-issue patent. The claims of the reissue patent were granted over Schwimmer, which strengthens the presumption of the validity of the patent.

The defendants claim that there are other differences between Schwimmer and the Steiner reissue patent. The fact remains that the defendants did not use the Schwimmer arrangement of the rolls but did use that of the Steiner reissue patent. This in itself is some evidence of invention by Steiner. Steiner Sales Company v. Schwartz Sales Company, 10 Cir., 98 F.2d 999-1003.

As to the Billings patent, the soiled towel take up roll is not supported on the soiled towel control roll, as specified in the claims of the patent in suit, and the attempt on the trial to show how the soiled towel take up roll might be supported on the soiled towel feed roll is beside the point as such a thing is not suggested in the Billings Patent.

■ A modification of the prior art, made after knowledge of the subsequent patent to show how the prior art patent might have been made to work like the later patent, does not carry weight as showing anticipation. The defendant might have used the device of the Billings patent but chose instead to use the idea of the Steiner reissue patent.

■ The defendant's contention that the reissue patent is invalid because there was not inadvertence, accident or mistake in the original grant and that the commissioner was without power to grant the reissue cannot be sustained. Defendant's claim is that the claims of the reissue patent were the same as those which were rejected by the patent office on the original grant and were cancelled and not included in the original grant. The patent examiner at first took the same view and so stated when the reissue patent was pending in the patent office. The applicant pointed out the difference between the new claims sought in the reissue and the claims rejected in the original patent. The examiner then withdrew such objection and granted the patent.

In the absence of any showing that the patent office examiner was clearly in error, and there seems to be no such proof here, the defendant must fail on this point.

■ Finally, the defendants claim that in the patent in suit the clean toweling is shown as hanging down from the clean towel feed roll while in the defendants' device the clean towel does not hang down from the feed roll but passes over a rod or bar and hangs down from this rod or bar, as was common in the prior art and that therefore the defendant escapes infringement.

The use by the defendants of an additional bar or rod does not avoid infringement so long as all the elements in the Steiner patent are used by the defendants, as they are here.

Even if defendants' rod was an improvement on the Steiner patent it would not exclude infringement. The conclusion is that the Steiner reissue patent is valid and infringed.

### Steiner Patent No. 1,735,516.

■ This patent was nicknamed on the trial the hinged shelf patent. This patent disclosed the idea of providing a shelf which is pivoted on a hinge on the inside of the cabinet so positioned as to be between the clean and soiled towel rolls. When the clean towel roll decreases in size the soiled towel roll increases in size and this moves the shelf so as to make sufficient room for the increasing soiled towel roll. In other words, the shelf moves into the part of the space which was formerly occupied by the decreasing towel roll and then leaves more space for the increasing towel roll.

Upon close examination of the defendants' expert he admitted that he did not find in the prior art any patent of a towel cabinet in which there was a pivoted shelf, which relates to support for a roll of clean toweling and which on account of its being pivoted would yield upwardly under pressure of the accumulation of toweling on the soiled roll. The Court understands this to mean that he found no patent in the prior art, showing a pivoted shelf like that of the Steiner patent under consideration.

The defendants contend that this patent is a mere paper patent and that Mr. Steiner admitted that his Company had never built the device commercially.

Defendants claim also that Mr. Steiner admitted on cross-examination that to use this structure it would be necessary to have a very wide cabinet which would project out from the wall nearly twenty inches as distinct from the 8 or 9 inches which ordinary cabinets extend out from the wall.

Defendants also contend that the expired Steiner patent No. 1,426,121, shows a soiled towel roll mounted on and a separating member consisting of guide rollers and their enclosing housing. The defendants further contend that as the clean towel decreased in size these guide rolls moved downward in the cabinet following the clean towel roll and provided more room for the soiled towel roll at the top.

The essence of the defendants' claim is that the expired Steiner patent No. 1,426,-121 has a mechanism which is moveable and accomplishes the same purpose of increasing the space to accommodate the soiled towel roll as it increased in size. This may be and probably is so. But the Steiner patent in suit has another device, namely the moving shelf, which is apparently more advantageous to accomplish the purpose sought.

Its greater usefulness must be attested by the employment of it in the defendants' towel cabinets. They might have used the device of the expired Steiner patent and have avoided infringement of the later Steiner patent in suit. The same is true of the other prior art patents which defendants' expert says accomplished the same purpose as the patent in suit. The use of the device of the patent by the defendants is some evidence of utility and of invention. Since no such device as the device of the Steiner patent has been shown in the prior art and admittedly there is none to show, the reasonable conclusion seems to be that this Steiner patent is not anticipated.

The defendants' claim that it is old in the art to hinge a partition in the cabinet so as to provide more room in one section by swinging the partition in another section to serve the convenience of the user and make the part smaller. Reference is to Steiner, 1,564,292.

In view of the statement of defendants' expert that there is no prior art patent which shows such moving shelf as is disclosed in the Steiner patent in suit, 1,735,-516, that prior Steiner patent cannot be considered as anticipation.

Whether or not plaintiff has used the Steiner patent in suit, and whether it is a mere paper patent, is not controlling here. The defendants did use it and have no right to use it without the license of the plaintiff.

It is held that the Steiner Patent 1,735,-516 is valid and infringed.

■■■ The remaining question is whether or not Darman as an individual should be enjoined along with the corporate defendant and whether he is personally liable for infringement of the patents in suit.

As heretofore shown, Darman was in business as an individual from 1926 to some time in 1935 or 1936 when he formed a partnership with one Abelove to continue the manufacture of towel cabinets.

The defendant corporation was formed March 27, 1926, with a capital stock of 101 shares of which the defendant Darman first had one half of the capital stock.

He must have acquired the remainder of the capital stock from Abelove, or whoever was the owner thereof, for, in the latter part of 1938 he sold the whole 101 shares of stock to one Shane of Chicago for $1,000 cash and a guaranteed salary of $6,500 per year plus 50% of any profits and also some agreement to provide help (possibly counsel) in any difficulty in manufacturing and distribution of the products.

Notices of infringement were served by plaintiff on the defendant Darman Company on March 28 and March 29, 1936. The defendant corporation continued to manufacture and sell towel cabinets.

After the sale of the stock to Shane, in the latter part of 1938, sales of cabinets were made to Shane or to corporations procured by him in which he was interested, probably constituting the larger part of the defendant corporation's output, though the proof is not clear, but some sales at least to the trade generally have since continued.

It is difficult to find in the record any evidence of Darman's pernicious individual activities or that he used the corporation as a cloak to commit a fraud. The record is not at all clear that he acted beyond the scope of his office as president. The showing must be clear in this respect and unless thus shown he cannot be enjoined individually under the authorities in this Circuit.

■■■ The fact that he held patents of his own and licensed the defendant corporation to manufacture towel cabinets under them is not a sufficient showing of pernicious activities outside of the corporation office of president. It was appropriate for him to grant licenses to the Darman

430

Company. It does not appear that he has licensed any other persons to manufacture under his patent.

There is no satisfactory showing that the defendant corporation is insolvent.

██ Under the authorities in this Circuit the corporate officer cannot be held personally responsible as an infringer unless he is shown to be acting beyond the scope of his authority, or is found to be conspiring to infringe under cover of the corporation, or using the corporation as a cloak to carry on infringement of others' patents. And usually insolvency of the corporation needs also to be shown. Reis et al. v. Rosenfeld, 2 Cir., 204 F. 282.

In New Departure Company v. Rockwell-Drake Corporation, 287 F. 328, 334, the second circuit held that a corporate officer could not be personally charged with infringement unless he was shown as acting beyond the scope of his office.

To the same effect are district court cases in this Circuit such as:

Tinsel Corporation v. Haupt, Dist. Court, E.D.N.Y., 25 F.2d 318; Kester Solder Company v. Silva Wares Company et al., D.C.S.D.N.Y., 53 F.2d 480, 482.

In the latter case the Court said: "The evidence is insufficient to show a conspiracy by them [the officers of the corporation] to infringe under cover of the corporations."

In the Trico Products Corporation v. Ace Products Corporation, Federal District Court of Connecticut, 30 F.2d 688, 689, it was stated that there was no evidence that the individual defendants either personally participated in the manufacture and sale of the alleged infringing articles other than as officers or that they used the corporate defendant as a cloak to avoid responsibility or that the defendant corporation was insolvent. The latter case cited Dangler v. Imperial Machine Company, 7 Cir., 11 F.2d 945.

This latter is one of the cases relied upon by the plaintiff, as also is Schiff v. Hammond Clock Company, 7 Cir., 69 F.2d 742.

Robert Findlay Mfg. Company v. Hygrade Light Fixtures Company, D.C.E.D.N.Y., 288 F. 957.

In the latter case cited, in the Eastern District of New York in 1923, the case was decided upon application for an order making five other persons and another corporation parties defendant to the action. That motion was made after the trial. The Court granted the motion upon a showing far different from that here.

In the Dangler case supra, the Court found that the Company was merely a shell and a sham corporation unable to meet its financial obligations and that the individual defendants lent the corporation large sums of money for the purpose of continuing the infringement and became parties principal by reason of their participation. There is no evidence here that the defendant Darman loaned this corporation money, but on the contrary the proof is that he had to secure someone else as partner to continue in business.

In Schiff v. Hammond Clock Company, supra, the Court found that the defendant Schiff as an individual and not as an officer of the electric clock corporation, had at various times sold electric clocks and that the defendant corporation was organized by the defendant Schiff and that he and his wife and son held all the stock in the corporation and other facts showed participation outside of this corporate office.

The record here does not show such facts which would bring this case within Schiff v. Hammond Clock Company case.

██ The decision is, though not without some slight hesitation, that the defendant Darman has not acted outside of the scope of his corporate office, that he has not knowingly and fraudulently, as an individual and not a corporate officer, used the defendant corporation as a shield, that the defendant corporation is not insolvent, and that the defendant Darman has not acted other than in good faith in the belief that the defendant corporation was not infringing the plaintiff's patent.

The conclusion is that the defendant Darman as an individual is not liable.

Findings and decree may be submitted and the decree settled upon notice if there is objection to its form.