## THATCHER HEATING COMPANY *v.* BURTIS.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

Argued April 5, 1887. — Decided April 18, 1887.

A combination of well-known separate elements, each of which, when combined, operates separately and in its old way, and in which no result is produced which cannot be assigned to the independent action of one or the other of the separate elements, is not patentable.

Letters-patent No. 104,376, dated June 14, 1870, granted to John M. Thatcher for improvements in fireplace heaters, are not for a particular device for effecting the combination described in the patentees' claim, but for the combination itself, no matter how or by what means it may be effected, and, as such, are void.

BILL in equity to restrain infringements of letters-patent. Decree dismissing the bill. Complainants appealed. The case is stated in the opinion of the court.

*Mr. B. F. Lee* for appellants.

*Mr. A. J. Todd* for appellees.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

This is a bill in equity filed December 13, 1875, by the appellants, as assignees of John M. Thatcher, to restrain the alleged infringement of letters-patent No. 104,376, dated June 14, 1870, granted to John M. Thatcher for certain new and useful improvements in fireplace heaters. There was a decree below dismissing the bill, from which the complainants prosecute the present appeal.

The patentee in his specification describes his invention as follows:

"My invention consists, first, of a base-burning fireplace stove, in which are combined the following elements, namely: A cylinder or body projecting outward from the mantel or frame, a fuel magazine or feeder within the said cylinder, and an opening through which the said magazine can be fed from above. The object of this part of my invention is to increase the capacity of the fuel magazine; secondly, of a base-burning fireplace stove or heater in which the magazine or feeder is extended to the feed-opening of the outer casing, so that there may be no open space across which to project the fuel on feeding the magazine; thirdly, in the combination, with a fireplace stove or heater, of a feeder or magazine projecting above the top of the heater, so as to increase the capacity of the said magazine.

"Figure 1 is a front view of my improved fireplace heater;

Fig. 2, a vertical section of the same; Fig. 3, a sectional plan; Fig. 4, a plan view with part of the mantel removed; Fig. 5, a view of the "slicer" or plate to be introduced into the fire-pot under the "feeder," for the purpose of holding up the coal which is unconsumed when the clinkers, ashes, &c., in the lower part of the fireplace have to be removed; Fig. 6 is a plan view of the grate, and Fig. 7 an edge view of the grate."

The specification then proceeds to describe in detail the various parts and arrangements of the heater, but as that portion is not material to a determination of the questions arising in the case it is omitted. The specification then proceeds as follows:

"A more minute description of my improved heater than that given above will be unnecessary, as several of the parts described and illustrated in the drawings form the subjects of other patents, and my present improvements relate especially

to the top-feeding arrangements of a fireplace stove or heater. I will now refer more particularly to these improvements.

"In constructing my improved heater I have so combined three elements or features as to produce an important result. These features are as follows: First, a cylinder or body of the heater projecting outward from the frame or mantel; second, a feeder or fuel-magazine within the cylinder; and, thirdly, an opening through which the said magazine can be fed from above.

"While fireplace stoves or heaters with protuberant cylinders and feeders or magazines were known prior to the date of my invention, I am not aware that the above combination of three features above referred to—namely, a top-feeding arrangement, a protuberant cylinder permitting such an arrangement, and a magazine within the cylinder—has ever been known or used prior to my invention of the same.

"It has been the practice to so construct base-burning fireplace stoves or heaters that the fuel had to be introduced into the feeder or magazine through a doorway in front; hence the magazine was of a very limited capacity. By so arranging the feed-hole, however, that the fuel can be introduced into the magazine from above, the capacity of the magazine is increased—a result which I especially aimed at in adopting the first part of my invention, namely, the above-mentioned combination, and in the production of my top-feeding, base-burning fireplace stove.

"The second part of my invention consists in extending the feeder or magazine to the feed-hole of fireplace stoves. This not only increases the capacity of the magazine to some extent, but an uninterrupted passage or guide is afforded for the introduction of fuel into the magazine through the opening in the outer casing.

"The capacity of the magazine is still further increased, in the present instance, by carrying the feeder up above the top of the heater, by placing thereon a movable section, *o*, furnished with a cover, *o'*, which has to be lifted off when coal has to be introduced into the magazine."

The first and second claims, which are alone involved in this controversy, are as follows:

"1. A base-burning, fireplace stove, in which are combined the following elements, namely, a cylinder or body projecting outward from the mantel or frame, a fuel magazine or feeder within the cylinder, and an opening through which the said magazine can be fed from above.

"2. A fireplace stove or heater, in which the magazine is extended to the feed-opening of the outer casing."

The case turned in the Circuit Court on the question of the validity of the patent on the ground of want of novelty in the invention in view of the state of the art at its date. In passing upon this question on final hearing, Judge Wallace, in his opinion, stated the grounds of his decree dismissing the bill, as follows:

"It is conceded that these claims are to be construed broadly, so as to cover the combination of a fireplace heater having a body projecting outwards from the mantel or frame, and a furnace-like portion in the chimney behind the mantel, with a fuel receptacle within the cylinder of the heater, which will preserve a supply of unignited coal while the heater is in operation, and an opening through which the magazine can be fed from above, the magazine extending to this opening. Inasmuch as the heater was old, and the fuel receptacle with the described opening was old when located within an ordinary coal stove, what Thatcher accomplished was merely the advantageous location of the fuel receptacle within the fireplace heater. As the complainants' expert, Mr. Brevoort states: 'The problem Thatcher had before him was to place the fuel magazine within the Bibb & Augee heater.'

"It must be conceded that it was not obvious that such a fuel magazine could be advantageously employed in such a heater. Attempts had been made by others to do the same thing without satisfactory results, but Thatcher's organization was a success, and immediately commended itself to the public. But Thatcher's broad claims cannot be sustained. There may have been patentable novelty in the means he employed to adjust the parts in the new organization, but there was none in merely bringing those parts together. They did not perform any new function in the new arrangement. The fuel magazine

does just the same work in the new structure it did in the ordinary coal stove. All the other parts of the fireplace heater operate precisely as they would if the ordinary fuel pot were used instead of the substituted magazine. The parts do not coöperate to produce a new result. By their aggregation the new structure contains all the advantages which resided before separately in several structures. The new heater is, therefore, a better heater than any which preceded it, but it does not present a patentable combination, irrespective of the means employed to adjust the several parts into efficient relations to each other.

" As, concededly, the claims of the patent are not to be limited to any such combination, they must be held void for want of patentable novelty." 12 Fed. Rep. 569.

On this appeal, counsel for the appellants contest the accuracy of the positions of the Circuit Court on which its decree is founded, and in opposition thereto contend: First. That it was sufficient to support the patent that Thatcher found out that the fuel magazine was useful in its new situation, and that its use in this new situation was not obvious to those skilled in the art; in other words, that Thatcher, having succeeded in making a better fireplace heater than any that had gone before it, by doing something that was not obvious to those skilled in the art, what he did involved invention as distinguished from mere mechanical skill. Second. That as regards fireplace heaters, the fuel magazine did perform a new function, because its use was never before known in such structures. Third. That the parts of the combination stated in the claims did not constitute a mere aggregation, but coöperated to produce a new result. This new result, it is claimed, consisted in securing in fireplace heaters a uniform and steady heat that could be regulated for their own purposes by the occupants of the upper rooms heated by means of furnace registers, at the same time furnishing heat for the room in which it was situated by means of a heater that did not require frequent attention. The result of the contention on these points as claimed is, that the fireplace heater of the patent, containing a magazine extending to the outer casing of

the heater, capable of holding a supply of unignited coal and feeding the same to the fire, was patentable as a new article of manufacture.

Mr. Brevoort, the principal expert on behalf of the appellants, states the case on their part in his testimony as follows:

"The problem which Thatcher had before him was to place the magazine of his patent within the Bibb & Augee fireplace heater, or rather, his invention may be said to have consisted in the conception of the idea of taking out the fuel chamber or pot of the Bibb & Augee device, and substituting therefor a magazine of the kind shown in the Thatcher patent, the execution of which conception, if successful, had for its object to confer upon the fireplace heater the regularity and steadiness of action which alone could be secured by the use of a magazine standing ready always to automatically feed the fire whenever it may become necessary. Now, it was not at all an obvious thing that this large mass of unignited coal could be put within the comparatively limited compass necessary for the ordinary fireplace heater in place of the incandescent coal contained in the pot or fuel chamber of the Bibb & Augee heater, and still leave a heater which would be successful. Indeed, one of the defendants' witnesses in this case placed a magazine in a fireplace heater, tried it, and abandoned it as useless and as a positive injury, rather than, as future experiments have shown, a great benefit to the structure. Another witness seems to have introduced a magazine into one of his fireplace heaters at about the date of Thatcher's patent. This witness says that he did not think it was important, but says that had he known anything of its importance he would have got a patent for it. These two witnesses clearly show that the putting of a magazine into a fireplace heater was not obviously a good method of improving the old Bibb & Augee heater, and that even after a magazine had been introduced that its utility was not manifest without experiment and careful trial, and this testimony is given by men who apparently were thoroughly skilled in the art and had had much and long experience in the fireplace heater business. A consideration of the old Nott structure, if it ever existed, as testified to,

would have deterred rather than encouraged any one from introducing such a fuel receptacle as was there shown into a fireplace heater which was required to heat rooms above and below simultaneously. For the reasons above given I think that it required invention to introduce a magazine extending to the top or outer casing of the stove into a fireplace heater having a protuberant front for heating the room in which the heater stood and a furnace-like back for heating the air for the rooms above. Most assuredly, the parts referred to in the first and second claims of the Thatcher patent coact when in action in the production of the result desired. The protuberant body heats the lower room. The mantel or frame separates one portion of the heater from the other, so that the protuberant body may perform its function while the furnace-like back may perform its function. The fuel magazine holds the fuel in readiness to supply the fire which is to heat both back and front alike with steadiness and uniformity, the magazine being fed through a hole in the outer casing directly, thus obviating the opening of any doors into the combustion chamber when the fire is to be fed and the consequent cooling off of the heater by admitting fresh air into the device above the grate. By the bringing together of these parts and their joint action one with the other a fireplace heater is formed having advantages over any heater that went before, and which form of heater has gone so extensively and largely into use that it has practically superseded all other forms, as I am informed."

This statement must be considered in connection with the well-established and admitted facts in respect to the prior use of fuel magazines in base-burning out-standing stoves, so classified as stoves standing detached in the room to be heated, to distinguish them from fireplace stoves or heaters which are partially enclosed by the chimney-piece. Thatcher makes no claim in his patent for the fuel magazine, as long prior to the date of his application such a magazine was in common use in what are known as base-burning stoves. In construction and in position, with relation both to the burning mass in the pit of the stove and to the outer casing through which it opened,

either on the top or at the side of the stove itself, the fuel magazine of the out-standing stove is the same as the fuel magazine when placed in the fireplace heater according to Thatcher's patent. It is admitted that what Thatcher did, and all that he did, was to transfer this well known fuel magazine from its use in an out-standing base-burning stove to a fireplace heater, equally well known and in common use as to its arrangement, construction, position, and mode of operation. When this fuel magazine was thus transferred from one kind of stove to another, in its new situation it performed precisely the same function, with respect to the fuel and the fire, as it had always been accustomed to perform in its old place, and the fireplace heater into which it was thus newly placed, so far as the generation and transmission of heat and heated air are concerned, operated precisely as it had habitually done before.

It is true that such a fireplace heater, by reason of the fuel magazine, was a better heater than before, just as the out-standing stove with its similar fuel magazine was a better heater than a similar stove without such a fuel magazine. But the improvement in the fireplace heater was the result merely of the single change produced by the introduction of the fuel magazine, but one element in the combination. The new and improved result in the utility of a fireplace heater cannot be said to be due to anything in the combination of the elements which compose it, in any other sense than that it arises from bringing together old and well known separate elements, which, when thus brought together, operate separately, each in its own old way. There is no specific quality of the result which cannot be definitely assigned to the independent action of a single element. There is, therefore, no patentable novelty in the aggregation of the several elements, considered in itself.

If, however, to adapt these separate elements to each other, so that they can act together in one organization, required the use of means not within the range of mere mechanical skill, then it would be true that the invention of such means for effecting a mutual arrangement of the parts would be patent-

able. If, in the present case, owing to the necessary form, size, structure, and situation of a fireplace heater as ordinarily made and used, there were ascertained difficulties in uniting such a fuel magazine as Thatcher adopted from its known use in out-standing base-burning stoves, and those difficulties were overcome by something more than mere mechanical ingenuity, he might have been entitled to a patent, not for the combination, however made, of the fuel magazine and the fireplace heater, but for the means which he had invented for effecting it. Nothing of that, however, appears in this case. The invention described is not of any such device for effecting the combination; no claim is made of that character. The claim made is for the combination, no matter how or by what means it is or may be effected.

In this view of the case, it is impossible to distinguish it, so far as the rule of decision is concerned, from the cases of *Hailes* v. *Van Wormer*, 20 Wall. 353; *Heald* v. *Rice*, 104 U. S. 737, 754; *Pennsylvania Railroad* v. *Locomotive Truck Co.*, 110 U. S. 490; *Morris* v. *McMillin*, 112 U. S. 244; *Hollister* v. *Benedict Manufacturing Co.*, 113 U. S. 59; *Thompson* v. *Boisselier*, 114 U. S. 1; *Beecher Manufacturing Co.* v. *Atwater Manufacturing Co.*, 114 U. S. 523; *Gardner* v. *Herz*, 118 U. S. 180.

There is no escape, we think, from the conclusions reached by the Circuit Court. Its decree is, therefore,

*Affirmed.*