## TRICO PRODUCTS CORPORATION v. RICO MFG. CO.

## SAME v. HACKETT PRODUCTS CO., Inc.

### Nos. 303, 304.

District Court, D. Rhode Island.
Dec. 6, 1930.

Barton A. Bean, Jr., and Harrison M. Brooks, both of Buffalo, N. Y., and Horatio E. Bellows, of Providence, R. I., for plaintiff.

Perley H. Plant and James E. Dooley, both of Providence, R. I., for defendants.

LETTS, District Judge.

These are two suits in equity tried together by stipulation between the parties. The allegations of each bill of complaint and relief asked are substantially the same, as also are the defenses thereto interposed in the answers filed by the defendants. Each bill embodies a prayer for an injunction, for an accounting of profits and damages on account of the alleged infringement by the defendants of patent No. 1,659,496, issued to Trico Products Corporation, the plaintiff, as assignee of John R. Oishei and Henry Hueber. The patent relates to the wiper element or blade for an automatic windshield cleaner.

Each suit also involves a claim that the defendant is guilty of unfair competition with the plaintiff because of manufacturing and selling wiper blades under a trade name and mark imitative of the plaintiff's and having copied the form, dress, and appearance of plaintiff's product, with intent to fraudulently deceive and mislead the public. At the conclusion of the trial, the court stated to the parties that the evidence did not establish a case of unfair competition. That view is here affirmed.

It was conceded by the defendants that the alleged infringing blades were manufactured and sold by them. No denial was made, and the evidence clearly establishes that the blades manufactured by the defendants were substantially identical in appearance and structure with the blades manufactured by the plaintiff, in accordance with the teachings and claims of the patent in suit.

We are here concerned with the question of whether plaintiff's claims in respect to its wiper element or blade embody invention within the meaning of the patent law. The plaintiff's claims in respect thereto, as stated in the letters patent, are as follows:

"We claim:

"1. A windshield cleaner for mounting on the windshields of motor vehicles, comprising a multi-ply wiper adapted to be mounted on a wiper arm whereby the wiper may flop over about its composite wiping edge at the beginning of each stroke of the arm for dragging behind the arm at an incline to the windshield glass, said multi-ply wiper comprising a holder and a plurality of flexible plies projecting unequal distances from the holder, said plies consisting of a major ply with a rubbing edge in constant engagement with the windshield glass and a minor ply on each side of the major ply having a rubbing edge spaced a shorter distance from the holder than said major ply rubbing edge for alternately contacting with the glass on one stroke in co-action with said major ply rubbing edge and lifting from the glass on the return stroke for reinforcing said constantly engaged major strip during its return wiping stroke, said minor plies acting in alternation with each other.

"2. A wiper for windshield cleaners comprising a holder member adapted to secure a plurality of flexible wiping strips, said holder member having a part for attachment to a movable windshield cleaner arm adapted to be actuated in movements substantially parallel to the windshield glass including co-operating parts on said arm and holder whereby on the movement of the arm in one direction, the holder member is disposed at an inclination to the face of the windshield glass and on the movement of the arm in the opposite direction, the holder member is inclined in the opposite direction to said face of the windshield glass, a plurality of flexible wiping strips in said holder including a major strip having a rubbing edge adapted to contact with the face of the windshield glass in movements of the arm and holder in both directions on the windshield glass, and minor strips on opposite sides of said major strip, the rubbing edges of said minor strips projecting shorter distances than the edge of said major strip from the holder toward the windshield glass whereby the minor strips at one side of the major strip in movement of the holder in one direction on the windshield glass engage the windshield glass in wiping contact at different inclinations to the windshield

glass than said major strip and provide there-between moisture-receiving channels and in movement of the holder in the opposite direction on the windshield glass close the moisture-receiving channels and reinforce said major strip without substantial contact with said glass, the minor strips on the other side of said major strip performing the wiping function together with said major strip during said last-named movement."

The patent claims here involved were in issue in a similar suit heard by Morton, J., of the District Court of Massachusetts. Trico Products Co. v. Apco-Mossberg Corporation (D. C.) 34 F.(2d) 672, 673.

In that case claim 1 was held to be invalid and claim 2 valid. In regard to the former, the court said:

"It would be readable on a loosely mounted Tanner squeegee. Courts are not called upon to strain construction in favor of claims of this character. This one seems to me not to be directed to those features of the plaintiff's wiper which were novel, and, if not invalid by reason of its obscurity, to be too broad in view of the prior art. It is in my opinion invalid."

Of claim 2 the court in part said:

"Claim 2 is clearly directed to the wiper of the patent, which it describes substantially as is done in the specification. Patent, page 1, lines 30 to 60. While it includes the operation of the wiper more fully than is desirable in a claim, taken as a whole, this claim seems to me to be a reasonably clear description of the novel features of the plaintiff's invention. In my opinion, it is valid and infringed."

In the case of Trico Products Corporation v. Ace Products Corporation (D. C.) 30 F.(2d) 688, 693, both claims of the patent were held to be valid by Burrows, J., of the District of Connecticut, who, it would seem, finds a valid claim of invention in the combination of the blade with the loose mounting, permitting the "flop" or tipping of the blade with each alternate stroke. Judge Burrows says:

" * * * And the fact that no one of the prior patents or the alleged prior use discloses the combination recited in the claims, I am constrained to hold that the claims are valid and infringed."

I am unable to fully harmonize my analysis of the patent and prior art with the result reached in either of these previous decisions. Several of the prior patents cited by the defendants in their answers relate to

windshield wipers and embody clear expositions and claims as to a loose or pivotal mounting of the wiper blade upon a moving arm. Among these citations are the following: Heineman, October 6, 1914, No. 1,112,-793; McWhirter, November 13, 1917, No. 1,246,829; Green, November 22, 1921, No. 1,397,511; Cain, February 14, 1922, No. 1,-406,341; Folberth, April 8, 1924, No. 1,489,-996.

In addition, the several Stromberg structures, shown to have been in general use for several years prior to the application for plaintiff's patent, clearly disclose the U-shaped clip or attachment for the blade with the moving arm.

In each instance the purpose of the loose mounting is to permit the blade to turn at an angle with the glass on each alternate stroke of the arm and to present a flexible and frictional contact. This prior art seems to me to preclude any valid combination claim embodying the features of the plaintiff's blade with a well-known manner of attachment. True, it can be urged that the inventive concept in the prior patents was to accomplish an angular contact of a single wiping edge with the glass; whereas, in the present case, the inventors' object is not only to present an angular contact of the major or central ply, but also to enable each of the minor plies on either side of the central ply on alternate strokes to come in wiping contact. There is here the germ of a combination claim; the germ of a new result accomplished by utilizing an old method in combination with the new blade.

The fact still remains, however, that in each instance the pivotal mounting does no more than permit the blade on each alternate stroke to "flop" or turn at an angle with the glass. In other words, the pivotal mounting operates with the new blade exactly as it does in the patent and Stromberg disclosures shown. The clause, "said holder member having a part for attachment to a movable windshield cleaner arm," etc., embodied in claim 2, adds nothing. The prior art above referred to clearly discloses such a part with a function as described. The new result, if any, can be approximately attributed to the design of the new blade. It merely requires an old form of attachment to the wiper arm in order to function as the inventors intended.

In the case of Thatcher Heating Co. v. Burtis, 121 U. S. 286, at page 294, 7 S. Ct. 1034, 1038, 30 L. Ed. 942, the court said:

"The new and improved result in the

utility of a fire-place heater cannot be said to be due to anything in the combination of the elements which compose it, in any other sense than that it arises from bringing together old and well-known separate elements, which, when thus brought together, operate separately, each in its own old way. There is no specific quality of the result which cannot be definitely assigned to the independent action of a single element. There is therefore no patentable novelty in the aggregation of the several elements, considered in itself."

I cannot read either claim as a combination claim.

The case is dependent upon there being a valid claim of invention in the blade itself. Judge Morton, supra, held that claim 1 was readable on a loosely mounted Tanner squeegee, referring to Tanner patent, September 22, 1925, No. 1,554,242. If the Tanner squeegee represents an anticipation of the blade disclosed and claimed in plaintiff's patent so as to invalidate claim 1, I am unable to find in claim 2 anything by which that claim could then be saved. There is no substantial difference between the two claims beyond the inclusion in the latter of the following:

"* * * Whereby the minor strips at one side of the major strip in movement of the holder in one direction on the windshield glass engage the windshield glass in wiping contact at different inclinations to the windshield glass than said major strip and provide therebetween moisture-receiving channels and in movement of the holder in the opposite direction on the windshield glass close the moisture-receiving channels. * * *"

The feature claimed, however, in the language quoted, borders upon a functional result rather than an inventive concept. The gathering of the moisture into the channels formed by the flexible plies and its discharge therefrom as the blade partially turns upon its axis when operated is a result effected by a blade operated as specified and designed, as described. It states merely what the blade will do. Invention must be found in the means, not the result. The inclusion of the language referred to adds nothing by way of invention. Eliminate from claim 2 the matter relating to the collection and discharge of moisture, and there is no substantial distinction between claim 1 and claim 2.

It has been urged that claim 1 is bad, as it amounts only to a claim upon the wiper element, the equivalent of which was embodied in the original claims 8, 9, and 10, rejected by the Commissioner of Patents. Such a view was expressed by the court in Trico Products Corp. v. Apco-Mossberg Corporation (First Circuit, November 26, 1930) 45 F.(2d) 594.

I do not so understand the law. There is nothing in the travel of the application in the Patent Office to indicate a constructive abandonment of the content of claim 1, nor, as I understand the facts, anything there transpiring to invalidate claim 1 because of the rejection of the original claims. After those claims were rejected, it appears from the file wrapper that the applicants promptly submitted the two claims here involved as amendments of the original application, accompanying their submission with the following introductory remarks:

"The recent interview courteously granted by the Examiner is acknowledged and two new claims have been substituted in lieu of the original claims, these two claims having been discussed with the Examiner and indicated by him as being probably allowable."

Under these circumstances, the substituted claims are not prejudiced because of the previous rejection by the Commissioner of the original claims. In the case of Smith v. Goodyear Dental Vulcanite Co., 93 U. S. 486, at page 500, 23 L. Ed. 952, the court said:

"We are not aware that filing a second petition for a patent, after the first has been rejected, has ever been regarded as severing the second application from the first and depriving the applicant of any advantage he would have enjoyed had the patent been granted without a renewal of the application."

See Walker on Patents (5th Ed.) 178.

If that doctrine is sound law in respect to a second petition filed after the rejection of the first, it would seem at least equally so where amended claims are submitted without delay and where it appears from the record that such submission was after conference with the representatives of the Patent Office and without any intention of abandonment.

As I view the matter, it is reduced to one question: Does the Tanner squeegee anticipate the invention here claimed, construing the claims to be upon the blade alone? It is a close and doubtful case. The window cleaning art, for which the Tanner blade was designed, appears at first to be remote from the art of mechanical windshield cleaning. A study, nevertheless, of the prior art indicates an association. It appears to have developed first from devices to clean the windows of

buildings, then windows of trolley cars, including an attachment for use by the motorman while the car was in operation. Then appears the devices for cleaning windshields, both hand and mechanically operated. The testimony indicates that the Stromberg three-ply blade was first suggested by observing a window cleaning squeegee. Chandler deposition Page 28. The drawings accompanying the Tanner application and issue could readily suggest the design of blade pictured in the patent in suit. Evidence of prior art in the specific field of windshield cleaners, which is embodied in the record of the present case, discloses prior use of two-ply blades and of three-ply blades, in the latter with the two lateral plies serving as supporting, rather than cleaning, members.

On the other hand, the plaintiff's blade, even if the general idea therefor could have been gathered from the Tanner squeegee, had to be refined, the thickness of the plies and materials used adapted to the special conditions to be met. The present patent was issued by the Commissioner of Patents over the Tanner reference, although there is some basis to doubt if it would have been issued had the claims of the patent been read by the examiner as here interpreted.

In considering the question of whether the presumption of validity of the respective claims has been overcome, significance must be attached to the apparent usefulness of the invention as indicated by the manner in which it has been accepted by the public. The evidence shows that from May 1, 1927, to December 31, 1929, the plaintiff manufactured, in accordance with this patent, and sold blades in excess of 9,800,000.

The Circuit Court of Appeals for the First Circuit in the Apco-Mossberg Case, supra, said:

"The Tanner squeegee, as we view it, was never adapted for inserting in a holder permitting a rocking motion such as is shown in the drawings and described in the application for the patent in issue here. The materials used in the Tanner squeegee were of necessity more rigid than those adapted for use in the plaintiff's wiper, and were not spaced for the purpose of securing the alternate contacts with the glass of the wiping edges of the several plies, being fastened in the frame or holder nearer the contacting ends than the wiping plies in plaintiff's wiper. The Tanner squeegee was never intended by the patentee, nor adapted for the particular use claimed by the patentee in this case and therefore did not anticipate it."

As I read the Tanner patent, from the point of view of a prior art disclosure, it is impossible to agree with the observations contained in the second sentence of the paragraph above quoted. The view expressed, however, in respect to this citation cannot be ignored by me, although the trial record in this case, in its disclosures of prior art, seems to be more complete than in the Mossberg Case.

Under all the circumstances now before me, I am constrained to hold that the presumption of validity of both claims 1 and 2 has not been overcome; that they are valid and have been infringed.

A draft decree, in accordance with these findings, may be submitted for settlement.