## J. I. CASE CO. v. GLEANER HARVESTER CORPORATION.

### No. 12404.

Circuit Court of Appeals, Eighth Circuit.

May 5, 1943.

Rehearing Denied June 4, 1943.

Cyril A. Soans, of Chicago, Ill. (Oscar D. McCollum, of Kansas City, Mo., and Paul J. Glaister, of Chicago, Ill., on the brief), for appellant.

Arthur C. Brown and Paul R. Stinson, both of Kansas City, Mo. (Claude A. Fishburn and Ryland, Stinson, Mag & Thomson, all of Kansas City, Mo., on the brief), for appellee.

Before GARDNER, JOHNSEN, and RIDDICK, Circuit Judges.

JOHNSEN, Circuit Judge.

This is a patent infringement suit, in which the lower court held the patent valid and infringed and the defendant has appealed.

The patent is Pierson, No. 1,972,031, entitled "Straw Retarder", and relating, by its recitation, "to harvesting machines and more particularly to conveying mechanism for delivering cut grain to the threshing and separating elements of the machine, the principal objects of the invention being to retain the cut grain in guided relation with the conveyor, to prevent entanglement of the grain about the conveyor shaft, and to

554

guide the grain into the cylinder feed spiral of the conveyor."

The specifications describe the retarder as an angle-shaped bar fixed along the rear side of the grain pan in a standard combine of the screw or auger-conveyor type, whose purpose is to prevent the cut grain from being lifted up at the rear of the pan and tossed back over the conveyor shaft, as it is propelled from the harvesting to the threshing element of the machine. Its function is described in the specifications as follows: "Due to the direction of rotation of the screw conveyor the straw tends to climb up the rear side wall of the grain pan but is intercepted by the bar (indicated on the patent drawing) and propelled through the space (also shown in the drawing) .formed between the bar and the wall of the grain pan * * *."

The claims, whose validity and infringement are here involved, are claims 1, 2, 5, 6, 8, 9, 10 and 11 of the patent. Claim 6 is typical of all these claims, and is in the following language: "6. In a device of the character described [a standard combine], a pan having a bottom and side portions, a screw conveyor rotatably mounted in the pan for conveying material along the pan, a retard member substantially co-extensive with the screw conveyor and extending longitudinally of said side portion for retaining material in feeding relation with the screw and below said retard member during its travel along the pan, and means for rotating the screw conveyor whereby flights of the screw move material across the bottom of the pan and upwardly under said retard member for retention between the conveyor and said side portion."

In non-technical language, the claimed invention consists simply in having placed, in the pan or trough through which the cut grain is moved from the harvesting to the threshing element of a standard combine of the screw or auger-conveyor type, a wooden or metal guard, fastened to the back of the pan, parallel with the conveyor, to hold the straw down and prevent it from rising up at the rear of the pan and being thrown forward over the top of the shaft, thus helping to form a closed space or pocket, with the bottom and side of the pan, for moving the grain forward.

Pierson, the inventor, was chief engineer for plaintiff and its corporate predecessors, which held a patent, Stevens et al., No. 1,702,323, for a small combine, known

commercially as the Gleaner combine. Manufacture of this combine was begun in 1924, when 5 machines were made. The Gleaner combine apparently filled a need of the small farmer, and, between 1924 and 1928, 5,300 machines were sold. The output for the year 1928 alone was approximately 3,000 machines. Up to that time, the Gleaner combine was the only one on the market that used a screw or auger conveyor. Prior to 1929, however, the conveyor pan of the Gleaner combine was open, without any straw retarder or guard. During these first few years, the company had received many glowing testimonials as to the successful operation of the machine. Gradually, however, according to Pierson's testimony, the farmer, with characteristic American instinct for speed, began to attempt to make the machine work faster. This material increase in speed caused the grain to rise up in the rear of the pan and be thrown forward over the top of the shaft, and to revolve with it. A similar situation sometimes developed also in slower operation, according to the evidence, if the straw was light and fluffy or was filled with viny weeds.

Pierson testified that in the summer of 1927 he went into the field, to watch the operation of the machines. In a wheat field in Kansas, he walked behind the conveyor, and, as the grain rose up in the rear of the pan, he used his hands or "a hammer handle or just anything to kind of give it a poke to feed it in, so that gave me an idea of putting a wood board and fastening it down so we would not have to run behind the machine." He stated further that "that worked so good that we came back (to the plant) and before harvest season started in 1928 we made one of those, what we started to call retarders, out of sheet metal * * *." Production of the retarder or guard was thereafter commenced, for use upon the 1929 Gleaner combines, and a patent was applied for and subsequently issued.

The use of the retarder or guard clearly increased the efficiency of the conveyor, where the combine was being operated at faster speeds, and, no doubt, also in some other special situations, as where the grain straw was abnormally light or fluffy.

The ability of a claimed invention to produce a successful or improved result is, of course, a necessary incident to the issuance of any mechanism patent, but it is not the measure of the right to the

patent. Such a patent issues fundamentally, not for the result, but for having discovered some patentable means of producing the successful or improved result. Flint v. G. R. Leonard & Co., 7 Cir., 27 F.2d 215; Knapp v. Morss, 150 U.S. 221, 14 S.Ct. 81, 37 L.Ed. 1059; Trico Products Corp. v. Rico Mfg. Co., D.C.R.I., 45 F.2d 599. The means for producing a desirable result cannot be made the basis for a mechanism patent, if they represent simply some concept or expedient of ordinary mechanical or engineering skill, such as would suggest itself readily and generally to those experienced in the field, when applying themselves practically to a solution of the obvious problem. Donner v. Sheer Pharmacal Corp., 8 Cir., 64 F.2d 217; H. D. Hudson Mfg. Co. v. Standard Oil Co. (Indiana), 8 Cir., 60 F.2d 377; Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58; Dunbar v. Myers, 94 U.S. 187, 24 L. Ed. 34.

We are clearly convinced that Pierson's device did not rise above this unpatentable level. Any practical mechanic, observing that a substance, which was being moved in an open-top pan or trough by a screw or auger conveyor, was rising up in the pan and was being thrown over the top of the conveyor so as to revolve with it, would, we think, readily have concluded, as did Pierson, that some restraining housing or guard was needed at the point of rising to hold the substance down in relation to the conveyor. In fact, it would seem to us that any practical-minded farmer, walking behind the conveyor and watching the rising straw, could equally have been expected to have "an idea of putting a wood board and fastening it down so we would not have to run behind the machine". Pierson's application of a board or metal sheet to the obvious difficulty and problem was therefore merely the use of "a simple mechanical expedient to supply a need as soon as the need arises", and was not invention. Hollister v. Benedict & Burnham Mfg. Co., 113 U.S. 59, 5 S.Ct. 717, 28 L.Ed. 901. Since the device itself was unpatentable, the height on the back of the grain pan at which the board or metal sheet would most efficiently serve its simple, practical purpose was, of course, mere mechanical adaptation and not inventive concept.

If the patent here had been valid, we should have agreed with the view of the trial court that there had been infringement.

The judgment is reversed, and the cause will be remanded with directions to dismiss plaintiff's complaint.