**MINNEAPOLIS–MOLINE CO.**

v.

**MASSEY–HARRIS CO.**

No. 14787.

United States Court of Appeals,
Eighth Circuit.

Nov. 19, 1953.

Andrew E. Carlsen, Minneapolis, Minn. (Douglas L. Carlsen, Minneapolis, Minn., on the brief), for appellant.

S. L. Wheeler, Milwaukee, Wis. (C. A. Taney, Jr., Minneapolis, Minn., on the brief), for appellee.

Before GARDNER, Chief Judge, and SANBORN and JOHNSEN, Circuit Judges.

JOHNSEN, Circuit Judge.

The suit is one by Minneapolis-Moline Company against The Massey-Harris Company for patent infringement. The trial court held that the patent was invalid for lack of invention, and the plaintiff has appealed.

The patent involved is Ronning et al. Patent 2,455,905, applied for in 1943 and issued in 1948. The Primary Examiner had rejected the application on all its claims, but the Board of Appeals had reversed the Examiner's decision.

The claims alleged to be infringed are 1, 12, 13, 14 and 15. Only their substance need be stated here. The invention claimed to exist under them was an improvement of the previous, conventional grain-combine, through the placing of a revolving drum in it, with fingers that offsettingly extend and retract through the drum's surface as it rotates, located over a forward part of the belt-conveyor running between the harvesting and the threshing elements of the machine, to serve as a feeding mechanism, by means of the fingers engaging the cut grain, assisting it into contact with the conveyor, stimulating its start upward on the conveyor, and,

through the retracting of the fingers occurring as the drum's surface rotates away from the conveyor, preventing the grain from being carried back over the drum or wrapping around it.

The retractable-finger drum had not theretofore been used as a feeding mechanism on the combines sold in the market. Other revolving devices, intended to serve the same primary purpose, were, however, in general use on such machines. Thus, Millard Patent 2,292,958 covered a drumlike "beater", with blades or wings for engaging the cut grain, having serrated edges, and so sloped as to be able to disengage themselves from the grain as it passed under the beater. Some combines used a rotating drum differing from that of plaintiff's patent only in that it contained fixed instead of retractable fingers.

These previous devices were found by the trial court on the evidence to have effectively served their feeding purpose as to normal stands of grain and at the speed with which farmers generally had engaged in operating their combines. In heavy or tangled grain, however, or when the farmer, with characteristic American impulse, began to speed up the operation of his machine, some congestion could arise, from the tendency of the cut grain, with its increased moving volume, to be picked up in part and carried back over the revolving feeder or to become wrapped around it. The use of the retractable-finger feeder, as shown by plaintiff's patent, eliminated or minimized these tossing and wrapping difficulties in the farmer's operation of his machine.

As has been indicated, prior to plaintiff's patent, the retractable-finger drum had not been used as a feeding mechanism for the conveyor on grain combines. Retractable-finger drums as such, however, had long been known in the agricultural-implements art and been the subject of varied utilization.

Innes Patents 1,896,626 and 2,133,143 made use of such a device as part of a "pick-up mechanism" for severed grain or other vegetation, to be utilized "with grain shockers, combines, hay-loaders, hay rakes, cornstalk loaders, grain binders, threshing machines, and the like." In these two patents, however, the drum was caused to operate, and the fingers to retract, oppositely to the action of the feeder of plaintiff's patent, in that the fingers were made to lift the cut grain up and over the revolving drum and to drop it onto the transverse conveyor, and thus the combinational cooperation between the pick-up mechanism and the conveyor was not the same as that existing under plaintiff's patent, in the latter's use of the retractable-finger drum to feed the grain directly into contact with the conveyor and stimulate it in its start upward on the conveyor to the threshing element of the combine. This difference in cooperative action and combinational relationship to the conveyor between the retractable-finger drum of Innes and that of plaintiff's patent was regarded by the Board of Appeals as representing novelty in the art and constituted the principal factor on which the Board predicated its reversal of the Examiner's decision.

But other references, apparently not considered by the Board—at any rate not discussed—were also in evidence before the trial court, of previous uses of the retractable-finger drum in agricultural machines and implements, which seemed to the court to be plain applications or demonstrations of the same element of cooperative action and relationship that existed in plaintiff's patent between the feeder and the underlying conveyor of the grain combine. Bullock Patent 1,168,932, in particular—which neither the file wrapper nor the Board's opinion indicates was before the Board as a reference—involved such an immediate coordinative use of a retractable-finger drum with an underlying conveyor as a feeding mechanism for an ensilage cutter. Not only was this relationship shown by the drawings but in the description given in the patent of how the retractable-finger feeder mech-

anism cooperatively functioned with the conveyor, it was expressly stated that, "as the drum is rotated, the fingers will be forced outwardly so as to engage the material in the [conveyor] trough and, as the same continues to rotate, the fingers will recede so as to release the material as the material is advanced [on the conveyor] toward the usual feed rollers."

In substance, what the trial court held was that, since the use of the retractable-finger drum undertaken by plaintiff's patent did not involve any difference in scope of function, mode of operation, or character of result over the previously employed feeder mechanisms (especially the drum-like "beater" of Millard and the fixed-finger drum of other combines) except that the retracting fingers served to prevent a carrying over or wrapping around of the grain on the revolving drum and so to eliminate any congestion of that nature in the moving of the grain, and since the retractable-finger mechanism and this material-releasing advantage which it possessed over other rotating pick-up or feeding mechanisms generally were matters of previous knowledge and utilization in the agricultural-implements art, and since even the immediate cooperative action and combinational relationship between the retractable-finger feeder and the conveyor belt—on which the Board of Appeals relied—were themselves employed in and disclosed by other patents (Bullock in particular, issued in 1916) involving the moving of cut materials, there could not soundly be said to have been at all any element of invention present in the substitution made of the retractable-finger drum for the previous feeder mechanism of a grain combine but such substitution was in the circumstances simply an exercise of such general mechanical skill as reasonably could be expected from the application of those engaged in the art.

Plaintiff argues, however, that even though all of the things which the trial court thus regarded as disclosed concepts and common property in the agri-cultural-implements art be so accepted in general, what plaintiff's patent did should still be recognized as having amounted to invention, in that it had served to solve a congestion problem which had long existed and which had become an increasing one in the field of combine use; that, despite such general familiarity as the craftsmen of the art may previously have had of the concepts and elements underlying plaintiff's patent, the industry nevertheless had not, during the many years that combines had been sold, come forward with the combination of plaintiff's patent as a solution; and that, when the combination of plaintiff's patent did appear, it had met with almost universal appeal, recognition and acceptance both in purchaser demand and in adoption by other manufacturers (some under licensing agreement from plaintiff and some through alleged infringement).

Such an argument, when fully sustainable, is naturally one of substantial appeal and for careful weighing, where the question of patentability seems otherwise close. Cf. Landis Mach. Co. v. Parker-Kalon Corp., 2 Cir., 190 F.2d 543. Here, however, the question of invention, in view of the concepts and disclosures of the prior art, did not impress the trial court as being in any way close. Moreover, even if the question might have been so viewed, under the standards obtaining before the more critical appraisals commanded by the present Supreme Court decisions, the trial court felt that the argument was in any event lacking in persuasive force in the immediate situation, as not being sustainable on the elements and circumstances involved.

In the first place, as the court found, the feeder mechanisms employed in combines up to the time of plaintiff's patent had functioned with effectiveness, in that no material problem of congestion from tossing or wrapping had been encountered by the farmer in normal stands of grain and at the speed with which he initially and generally had been undertaking to operate his combine.

Still further, the court also was convinced from the evidence that, through the depression years of the 1930's and until the time of the strong economic upturn that came from our preparations for national defense and our entry into World War II, the primary concern and demand of the farmer, in such purchases of agricultural implements as he made, had been for lowness of price, and that the substantial increase in cost involved in adding a more complicated and delicate feeder element, such as the retractable-finger drum, to eliminate whatever congestion might sometimes occur in a combine from tossing or wrapping, was during that period unfeasible practicably and competitively, and that the problem of tossing or wrapping had accordingly not been one that up to that time had been seriously perplexing the art or with whose solution it could be said to have been gropingly concerned. In fact, testimony, which the court credited, on the part of one of the largest combine manufacturers in the market (one which had for some business reason taken out a license from plaintiff) showed that one of its engineers had in 1940, before the disclosure of plaintiff's patent, suggested the use of a retractable-finger feeder on its combines, but that, in the agricultural conditions then still existing, the recommendation had not been productionally adopted because of the increase in the selling price of the machines which it would have involved. The fact of the concept having thus existed and been suggested as a general engineering-department improvement was corroborated and confirmed by a diary from the department files of the plant for the year 1940, containing a sketch of such a mechanism as a feeder.

■ On all of the considerations which have been set out, the trial court's holding, that the concept of plaintiff's patent did not in the situation rise to the height of invention, has such a substantial probative basis for the evaluation made that it cannot be declared by us to be clearly erroneous. The facts which the court found to have existed entitled it to appraise the situation as constituting simply one in which there had been a use of an existing and well-known device in the agricultural-implements art, with its characteristic and obvious material-releasing advantages, in a feeder-conveyor combination of cooperative relationship which had been employed in and was taught by other existing agricultural implements and previous patents (and not with any general novelty in this respect as the Board of Appeals mistakenly declared) as a means of eliminating the tossing and wrapping difficulties which other feeders could produce, and with this improvement being made at a time when the adoption thereof on a combine had become commercially opportune, from the speeding up of the operation of his combine in which the farmer was engaging, with characteristic American impulse, and in the demands of the war situation upon him, and from the point having economically been reached in the agricultural industry where the farmer was able and willing to pay for this added convenience, as he had not previously been.

On this basis, like in J. I. Case Co. v. Gleaner Harvester Corporation, 8 Cir., 135 F.2d 553, what plaintiff's patent added in the combine field was only such a step of advance or solution as could reasonably be expected to occur in the art, from the application of its general mechanical skill, when the practical need therefor or the commercial desirability thereof provided the incentive for an exercise of that skill.

■ Variations and refinements have been made in plaintiff's arguments, which it is unnecessary here to discuss. The trial court's memorandum opinion gave full and careful consideration to all of plaintiff's contentions. One minor contention made here may be noted. Complaint is made of the admission in evidence of the diary referred to above in corroboration of the concept and consideration of the retractable-finger feeder as a general suggestion of the engineering department of another combine manufacturer occurring in 1940. The

testimony of the witness by whom it was produced showed that the diary represented a book provided by the company and used by the engineering department to record "any pertinent information they might have relative to machines, movement of machines, patentable mechanisms and so forth," and, as a matter of fact also, that the witness personally knew that the sketch in the diary constituted the record made of the engineering department's concept and suggestion at the time. This plainly was sufficient to entitle the entry to be received in evidence under 28 U.S.C.A. § 1732, as a record made in regular course of business.

Affirmed.